Fox et al. v. Webster.

---

OSMOND FOX *et al.*, Respondents, *v.* BENJAMIN F. WEBSTER, Appellant.

1. *Fraudulent conveyances — Conspiracy — Fraudulent intent — Facts showing, should go to the jury.*— A. being in embarrassed circumstances, agreed with B. to make time purchases to the extent of his credit, and turn over the property to B. under pretense of sale, but the consideration being in fact merely colorable and fictitious. B. was then to negotiate a compromise with A.'s creditors and afterward divide the profits with A. In replevin by the vendors for a portion of the goods so turned over by A., it appearing that they were bought after the formation of the conspiracy, *held,* that such facts were evidence which ought to go to the jury, tending to show the existence of a fraudulent intent on the part of A. at the time the purchase was made.

Fox et al. v. Webster.

Nor did the fact that a secret purpose was entertained of forcing an ultimate compromise, by which some part of the purchase money might in the end be paid, at all mitigate the character of the fraud.

2. *Practice, civil—Pleadings—A general allegation of fraud is sufficient.*— It is sufficient if a petition allege fraud generally, without going into its history and details.

3. *Sales—Intention to defraud vitiates a sale.*—The preconceived design on the part of the vendee of not making good to the vendors the purchase money entering into the transaction, vitiates the purchase and gives the vendor a right of rescission.

4. *Evidence—Depositions—Objections to form of testimony must be made, when.*—Under the rules of the St. Louis Circuit Court, objections to the form of questions propounded to witnesses in the taking of depositions must be taken on the examination, or they will be treated as waived. The statute relating to depositions (Wagn. Stat. 528, § 30) does not affect the rule. The "competency and relevancy" therein referred to point to the substance of the testimony sought to be elicited, and not to the mere form of the question.

*Appeal from St. Louis Circuit Court.*

*Pattison*, and *Rankin & Hayden*, for appellant.

I. The mere fact that Cozzens & Co. were insolvent, and that they knew themselves to be so, and that they concealed that fact from the plaintiffs — supposing such facts to be proved — do not furnish ground for the rescission of the sale. (Hill. on Sales, 307 ; 2 Pars. on Cont. 270 ; Sto. on Sales, § 176.) The cases all hold that the design which will vitiate the sale and render it null, is one not to pay for the goods at all — to get them for nothing. (Kirby v. Wilson, M. & Moore, 181 ; Bristol v. Wismore, 1 B. & C. 514 ; Ash v. Putnam, 1 Hill, 305 ; Acker v. Campbell, 23 Wend. 272 ; Smith v. Smith, 21 Penn. 369.)

II. As a ground of recovery, a general allegation of fraud is not sufficient. It is true, this court has held that where fraud is set up as a defense, then it may be alleged generally. (See Montgomery v. Tipton, 1 Mo. 446 ; Pemberton v. Staples, 6 Mo. 59 ; Edgell v. Sigerson, 20 Mo. 494.) But in Hill v. Miller, 36 Mo. 182, the petition contained a general allegation of fraud, and this court held it to be insufficient. This is in harmony with the case in 9 Mo. 182.

*Hitchcock & Lubke*, for respondents.

CURRIER, Judge, delivered the opinion of the court.

The plaintiffs sue in replevin to recover possession of thirteen cases of cigars. The defendant controverts the plaintiffs' title, and alleges that the cigars were by them sold and delivered to James G. Cozzens & Co., and that Cozzens & Co. thereby acquired the legal title to said cigars and a right to their possession. The defendant claims title under Cozzens & Co. as their assignee in bankruptcy.

The plaintiffs' replication to defendant's answer admits the sale to Cozzens & Co., but avers, in avoidance of it, that the sale was fraudulently procured, and that the plaintiffs seasonably repudiated and disaffirmed it.

1. At the trial below, after the evidence for the plaintiffs was closed, the defendant asked an instruction, which was refused, to the effect that the plaintiffs could not recover. The instruction is based on the theory that the evidence failed to show any intent on the part of Cozzens & Co., existing at the date of the purchase, to cheat and defraud the vendors.

The case shows this general state of facts: Cozzens & Co. being in embarrassed circumstances, entered into an arrangement with one McCreery, which had for its object, among other things, the ultimate discharge of the former from their firm liabilities. It was agreed between the parties to the arrangement that Cozzens & Co. should make time purchases to the extent of their credit, and then turn over the property thus acquired to McCreery, through the forms and under the pretense of a sale to him for a valuable and adequate consideration, but it was prearranged that the consideration should in fact be merely colorable and fictitious. It was also further arranged that McCreery, after he should thus acquire the property, should negotiate a compromise settlement with Cozzens & Co.'s creditors, and then divide the ultimate profits of the enterprise with his associates. These general facts are not disputed; nor is it doubted that Cozzens & Co. proceeded to make the contemplated purchases, turning over to McCreery the results, in accordance with their prearrangement with him. Among the property thus transferred was that which forms the

subject-matter of this suit. There was evidence tending to show that the cigars sued for were purchased subsequently to the formation of the conspiracy. If so — and that was a fact for the jury to find — there was evidence enough to carry the case to the jury on the question of the existence of a fraudulent intent on the part of Cozzens & Co. at the time the purchase was made. Nor does the fact that there was a secret purpose entertained of forcing an ultimate compromise, by which some part of the purchase money might in the end be paid, at all modify, mitigate, or soften the character of the fraud. The conspiracy arrangement discloses a purpose on the part of Cozzens & Co. never to pay their debts in full. The unpaid balance remaining after the contemplated compromise, it was the purpose of the vendors never to pay at all. That was a central idea in the fraudulent scheme.

2. Much criticism of an instruction given at the instance of the plaintiffs is indulged in on the part of the defendant's counsel. The instruction directed the jury that if they found certain facts, and also that Cozzens & Co. bought the cigars with a predetermined design never to pay for them, their verdict should be for the plaintiffs. The instruction is not objected to as containing an incorrect legal proposition, but as being inapplicable to the case, and as being based on a theory of fraud not disclosed in the pleadings.

In reply to this objection, it is sufficient to say that it was not necessary that the pleadings should disclose any particular theory of fraud. It was sufficient to allege fraud generally, without going into its history and details, which it is often very difficult to do. Fraud usually consists of many incidents and circumstances, which are liable to run into such detail and complication that a minute statement of them would not only be inconvenient in a pleading, but perhaps in some cases quite impracticable. It has, therefore, been repeatedly held by this court that a general allegation of fraud in a proceeding at law is sufficient. (11 Mo. 317; 6 Mo. 59; and see opinion of the court in Edgell v. Sigerson, 20 Mo. 495.) These decisions were in cases where fraud was alleged as a defense, which is practically the position of the

plaintiffs here, as regards the contract of sale set up in the defendant's answer. They allege fraud as a defense against that contract and its consequences. But it is not so entirely clear that the plaintiffs' replication is open to the criticism made upon it, when fairly construed. It alleges that it was the intent and design of the parties to the conspiracy to procure the sale in question fraudulently and so as to " cheat and defraud the plaintiffs " out of their property " and the value thereof." What is this, in effect, but an allegation that the purchasers bought the property with the preconceived design of not paying for it? The preconceived design to cheat the plaintiffs out of their property and its value, involves the idea of a preconceived design of not making good to the vendors the purchase money ; and that preconception entering into the transaction vitiated it, and gave the vendors a right of rescission, which they appear to have acted upon with promptitude. (Ash v. Putnam, 1 Hill, 302.)

3. No error is discovered in the action of the court in admitting or excluding testimony. Under the rules of the St. Louis Circuit Court, objections to the form of questions propounded to witnesses in the taking of depositions must be taken on the examination, or they will be treated as waived. The statute in relation to depositions (Wagn. Stat. 528, § 30) has no bearing on this inquiry. The competency and relevancy there referred to point to the substance of the testimony sought to be elicited, and not to the mere form of a question.

We discover no radical defects in the plaintiffs' pleadings, or error in the action of the court which would justify a reversal of the judgment, and it will consequently be affirmed. The other judges concur.