Sulzbacher Bros. *v.* Bank of Charleston.

SULZBACHER BROS. *v.* BANK OF CHARLESTON.

(*Nashville.* December 15th, 1887.)

1. BILLS AND NOTES. *Presentment for payment. Acceptor's doors closed. Notary's duty.*

Where, on presentment of a foreign bill of exchange for *payment* at the acceptor's usual place of business, within proper hours, the notary finds the doors closed, he is justified—nothing further appearing—in protesting the bill for non-payment without inquiry for the acceptor at his residence, and without making further effort to find him.

Cases cited and approved: 35 Penn., 250; 23 How. U. S., 368.

Cited and distinguished: Bank *v.* Fowlkes, 2 Sneed, 555.

2. SAME. *Same. Same. Sufficiency of notary's certificate.*

Hence, in an action against the drawers of such protested bill, the notary's certificate that he exhibited the bill "at the place of business of the acceptors, and demanded payment of the same, but found it closed, and no one there to respond to demand, which was thereby refused; whereupon, I made out notice," etc., etc., is sufficient *prima facie* evidence of the dishonor of the bill.

3. SAME. *Same. Same. Evidence to impeach notary's certificate. Suspension. Abandonment.*

In such case the notary's certificate may be impeached by satisfactory evidence that at the time of the demand the acceptor had permanently abandoned or removed from his usual place of business; but evidence showing a suspension of business merely, without permanent removal or abandonment, is not sufficient to invalidate the notary's certificate.

---

FROM DAVIDSON.

---

Appeal in error from Circuit Court of Davidson County. FRANK T. REID, J.

The Bank of Charleston, S. C., the holder for value of a bill of exchange drawn by Sulzbacher Bros., of Nashville, Tenn., upon Keller & Rushing, of Charleston, S. C., brought suit thereon against said drawers after it had been protested for non-payment, and recovered judgment. The defendants appealed.

N. D. MALONE for Sulzbacher Bros.

COLYAR, MARKS & CHILDRESS for Bank.

FOLKES, J.     This is a suit brought in the Circuit Court of Davidson County by the bank, as the holders for value in due course of trade of a draft or bill of exchange drawn by the plaintiffs in error, at Nashville, on December 2d, 1882, for $892.95, payable thirty days after date to the order of the drawers, addressed to Keller & Rushing, Charleston, S. C., indorsed by Sulzbacher Bros., and accepted by Keller & Rushing.

The draft was drawn to cover the amount of a bill of goods sold by the drawers to the acceptors, and was by the bank discounted for the benefit of the drawers.     The paper, not being paid at maturity, was protested.

The question which we are to consider is as to the sufficiency of the notarial certificate with reference to the demand for payment.     The following is a copy of so much of the certificate as is necessary to be noticed:

Sulzbacher Bros. *v.* Bank of Charleston.

&#42;   &#42;   &#42;   " I, Haywood Thayer, notary public,   &#42;   &#42;   &#42;   exhibited the original draft &#42;   &#42;   &#42;   at the place of business of Keller & Rushing, the acceptors, and demanded payment of the same, but found it closed, and no one there to respond to demand, which was thereby refused; whereupon I made out notice," etc., etc.

The contention on behalf of the plaintiff in error is that it was necessary for the notary, upon finding the place of business of the acceptors closed, to have gone to their residence, or to have made further inquiry and effort to find them. Failure to do this, it is insisted, discharged the drawers.

Can this contention be sustained? We think not. Being a foreign bill of exchange, the protest must show upon its face all the facts necessary by the law-merchant to charge the drawer and indorsers. And while the protest is not conclusive, but only evidence of such facts as are proper to be stated in it, it may always be rebutted by other evidence showing how the demand was made, or that proper diligence was not used to make it.

With the protest before us, and the presumption that the notary, as a public officer, has done his duty, on the one hand, and from the proof offered in rebuttal on the other, the inquiry always is, Has due diligence been used by the notary, under all the circumstances, to find the party and make the demand?

Let us apply this test to the facts of this case. The language of the certificate we have already

seen. The only proof in the record which it is contended tends to rebut the presumption in favor of the sufficiency of the notarial act is that the acceptors had "suspended," and "had made a second mortgage," shortly before the maturity of the bill. From which it is argued that their place of business had been abandoned, and that, if the officer was not required, ordinarily, to go to the residence when the place of business is temporarily closed or the parties absent, he would have to do so when the parties had ceased to have any place of business.

In the first place, it is proper to reply that the proof does not show that the acceptors had ceased to have and use a place of business. There is nothing to show the character, nature, or extent of their suspension. The only witness who speaks on this subject is a bank officer, who says they had "suspended;" that the bank had appropriated a small balance to their credit on deposit to the payment in part of a debt due by them to the bank; and that they had made a second mortgage to secure an indorser on a note held by the bank, under which property embraced therein was sold, and proceeds applied to the payment of the note.

All of this may be perfectly consistent with the retention by them of their old place of business, either for the continuation of business or in winding up their old business. Indeed, the term "suspended," in the connection in which it is used, would ordinarily mean a suspension of payment, an

embarrassed financial condition, but not necessarily a cessation of business and a removal from the old stand.

Had the facts been as now assumed in the argument on behalf of the drawers, it would have been a very easy matter for them to have made the proof, the accessibility and admissibility of which is unquestioned.

We are of opinion that, if a party has closed, in the sense of an abandonment of his place of business at the maturity of the paper, but has a residence or other place of business in the city, which could be ascertained by reasonable inquiry, a presentment at the former place of business would not be sufficient.

But unless it is shown that he has abandoned or permanently closed it, it is his duty to keep some one there to answer business demands during business hours; and the statement of the notary's certificate that he called at the place of business of the acceptor to make demand, is sufficient; and the presumption is that the demand was made in business hours. *Baumgarden* v. *Reeves*, 35 Penn., 250; *Wiseman* v. *Chiapella*, 23 How. U. S., 368.

In this latter case there is a very full and instructive discussion of the question by the Court, in the course of which it is said:

"Merchants usually register their acceptances in a bill-book, and it cannot be presumed that they are unmindful of the days when they are matured. Should their counting-rooms be closed on such

days, the law will presume that it has been done intentionally to avoid payment, and on that account that further inquiries need not be made for them before protest can be had for non-payment."

Continuing, they say:

"Cases can be found, and many of them, in which further inquiry has been deemed proper, and a failure to make which has been deemed want of due diligence; but the rulings in such case will be found to have been made on account of some peculiar fact in them which does not exist in this case."

To this view the learned author of Daniel on Negotiable Instruments, in Section 1118, lends the weight of his opinion, adding, however, that "it would be safer, perhaps, to make some further effort to find the payor when the doors are found closed, as the authorities are not uniform on this question."

We are content to take the view which holds further effort unnecessary as sound in principle and amply sustained by authority, and hold the presentment at the acceptor's place of business sufficient where the notary finds such place closed, there being no explanation furnished as to why it was closed. It is the duty of the acceptor, who is the principal debtor, to provide for the payment of the bill; and if he is not in himself, and there is no one present to answer for him, when the holder, through the notary, calls at his usual place of business, the bill may well be treated as dishonored, and protested for non-payment.

To so adjudge in a case of presentment for payment is not to hold that the same would suffice where the presentment is for acceptance. The party is not under the same obligation to be at his usual place of business, or to have some one there to represent him, in the matter of accepting drafts generally, that he is to provide for payment of bills already accepted, with the date of their maturity fixed. Due diligence might well require of the notary further efforts to find the party whose acceptance is desired.

But it is urged by counsel for the plaintiffs in error that the case of *Union Bank* v. *Fowlkes*, 2 Sneed, 555, is authority for his contention here.

Without quoting the general observations of the learned Judge, which, it is said, warrant the argument made, it is sufficient to call attention to the fact that on page 559 of the opinion Judge Caruthers says:

"If the place of business be closed or discontinued, what diligence must be used, if any, to find the acceptor or his dwelling, or to ascertain that he has none, or is not himself in the city, is not a question in the case, and need not be considered."

The judgment of the Circuit Court, holding the drawers liable, will be affirmed, and the report of the Commission of Referees in all things confirmed.