## Clough v. Holden, *Appellant.*

### In Banc, March 25, 1893.

1. **Bills and Notes:** DEMAND FOR PAYMENT: NOTARY. A notary who receives a bill or note for protest should make a demand of the person primarily liable at his usual place of business within business hours.

2. ————: ————: PROTEST: BUSINESS HOURS. In an action against the indorser of a note which was payable "at room 70, Home Insurance Building, Chicago, Illinois," the certificate of protest for non-payment recited that the notary went with the note to the office of the maker at the place of payment named in the note "at 5:20 P. M. to demand payment thereof and found the door locked," whereupon he protested it, *held:*

    (1) That the notary's certificate was only *prima facie* evidence that the note was presented for payment in business hours, and

    (2) That the court erred in excluding evidence offered by defendant, that 5:20 P. M. was after the general hours of business in Chicago, among business and office men.

3. **Evidence:** INCOMPETENCY OF WITNESS: WAIVER. An objection to a witness for personal incompetency comes too late when made for the first time in the appellate court.

4. **Note:** PLEADING: ANSWER: FRAUD: EVIDENCE. An answer in an action on a note alleged that it was obtained from the maker by fraud and misrepresentation and without consideration, and that plaintiff knew it had been so obtained and that he never paid value for it. *Held,* that it was inadmissible under said allegations for defendant to show that the note in suit was a renewal note given for two prior ones; that the latter were given for certain property which was misrepresented to the maker who in ignorance of its value and amount gave the notes for it, and that plaintiff who claimed to be an innocent purchaser for value was in fact a partner of the vendor of the property.

Clough v. Holden.

5. ——: ——: ——: ——: ——. Evidence was competent under the general allegation of fraud contained in the answer to show that the note in suit was obtained by fraud. (*Edgell v. Sigerson*, 20 Mo. 494.)

6. **Fraud**: PETITION: PLEADING. Where a petition charges fraud the facts constituting the same should under the code be averred, and this is true both at law and in equity.

*Appeal from Jackson Circuit Court.*—HON. R. H. FIELD, Judge.

REVERSED AND REMANDED.

*Warner, Dean & Hagerman* for appellant.

(1) The instruction given for plaintiff was erroneous, because it based plaintiff's right to recover upon the finding of a single fact (and did not properly state the law as to that fact), while it ignored every other question in the case. *Clark v. Hammerle*, 27 Mo. 55, 70; *Birtwhistle v. Woodward*, 95 Mo. 113; *Bank v. Metcalf*, 29 Mo. App. 384. (2) The court erred in excluding the evidence offered by defendant to show that the note was presented for payment after business hours. 1 Daniel on Negotiable Instruments [4 Ed.] secs. 601, 603; Tiedeman on Commercial Paper, sec. 317, and cases cited; Story, Promissory Notes [3 Ed.] sec. 226; Story, Bills of Exchange, secs. 236, 349; *Swan v. Hodges*, 3 Head (Tenn.) 251; *Sulzbacher v. Bank*, 86 Tenn. 201; *Baumgardner v. Reeves*, 35 Pa. St. 250; *Shed v. Brett*, 1 Pick. (Mass.) 412; *Parker v. Gordon*, 7 East, 385; *Dana v. Sawyer*, 22 Me. 244; *Lunt v. Adams*, 17 Me. 230. (3) The court erred in refusing to allow defendant to show that the original notes, for which the note sued on was a renewal, were obtained from Bancroft by the fraudulent misrepresentations of Leland, and that plaintiff was a partner of

Leland, and knew of his fraud and misrepresentations in obtaining the original notes; and that Bancroft at the time he gave the note sued on was ignorant of plaintiff's connection with Leland, and supposed he was an innocent holder for value of the note sued on. *Brown v. North*, 21 Mo. 528; *Bank v. Fowler*, 36 Mo. 33; 1 Daniel on Negotiable Instruments [4 Ed.] secs. 193, 789. (4) The court erred in permitting plaintiff to dismiss as to Bancroft and prosecute the action as to appellant after appearance and answer filed by said Bancroft, it appearing that appellant stood in the relation of an accommodation indorser or surety for said Bancroft. (5) Under the general allegation of fraud in the answer defendant was not bound to prove any particular kind of fraud. *Edgell v. Sigerson*, 20 Mo. 494; *Smalley v. Hale*, 37 Mo. 102; *Fox. v. Webster*, 46 Mo. 181. (6) Where a compromise is obtained by fraud it should be treated like any other fraud; no sanction can attach to it because it is a compromise. *Hoge v. Hoge*, 1 Watts, 216. (7) It was not necessary for defendant to first tender back the property to which he is equitably entitled, and respecting which a court of equity would have compelled a surrender and cancellation in his favor in the first instance. 1 Bigelow on Fraud, p. 424; *Moody v. Drown*, 38 N. H. 45; *Montgomery v. Bucyras, etc.*, 92 U. S. 257. Even if plaintiff was entitled to a surrender of the original notes and collateral, a delivery at the trial was sufficient. *Tozier v. Crafts*, 123 Mass. 480. (8) When a plaintiff invokes the aid of a court to obtain the benefit of a contract founded on fraud he cannot obtain standing therein on the ground therein that prior to the bringing of the suit the party he has defrauded had not rescinded the agreement. 1 Bigelow on Fraud, 438.

*Karnes, Holmes & Krauthoff* for respondent.

(1) Plaintiff's instruction omits no issue as to which there was any evidence before the court; it covers the whole case and was rightly given. The three things said to be requisite to support the plaintiff's case were all shown by the notary's certificate of protest read in evidence. This certificate was *prima facie* evidence of the facts therein stated. (1 Revised Statutes, sec. 4880.) Being documentary in its character, in the absence of any evidence to the contrary, its *prima facie* character became conclusive. *Kelley v. Jackson*, 6 Pet. 622; *United States v. Wiggins*, 14 Pet. 334; *Magoffin v. Railroad*, 102 Mo. 540. (2) Business hours except in cases of banks range through the whole day down to the hours of rest in the evening. *Cayuga Bank v. Hunt*, 2 Hill, 635; *Salt Springs Bank v. Burton*, 58 N. Y. 430; *De Wolf v. Murray*, 2 Sandf. 166; *Triggs v. Newnham*, 1 C. & P. 631; *Morgan v. Davison*, 1 Starkie, 114; *Wilkins v. Jadis*, 2 B. & Ad. 188; 1 Daniel on Negotiable Instruments [4 Ed.] secs. 911, 912; *Worley v. Lyon*, 117 Ill. 244; *Skelton v. Dustin*, 92 Ill. 49. The direct ruling of the highest court of the state whose law governs the point under consideration is conclusive of the question. *Roquette v. Overman*, L. R. 10 Q. B. 525. (3) The rule must now be regarded as settled that it is not sufficient to plead fraud generally but that the facts constituting the alleged wrong must be set out. Bliss on Code Pleading, sec. 211; *Smith v. Sims*, 77 Mo. 269; *Reed v. Botts*, 100 Mo. 62; *Hoester v. Sammelmann*, 101 Mo. 619; *Duffy v. Byrne*, 7 Mo. App. 417. (4) Before liability on the note sued on could have been escaped, it was necessary to tender back to Clough the $6,900 note and the collateral security he held for its payment, for, in spite of all these, defendants could say

that note constituted a valid obligation against Leland. 1 Bigelow on Fraud, p. 75, *et seq;* 2 Chitty on Contracts, [11 Am. Ed.] p. 1089, note m., p. 1092; *Ackerman v. McShane,* 9 South. Rep. 483; *Kinne v. Webb,* 49 Fed. Rep.; 2 Daniel on Negotiable Instruments [4 Ed.] sec. 193; *Brown v. Morgan,* 65 Miss. 369; *Brown v. Ins. Co.,* 117 Mass. 479.    (5) Under our statute the plaintiff was at liberty to sue any or all of the parties to the note described in the petition.    1 Revised Statutes, secs. 2384, 2387; 1 McQuillin's Missouri Practice, secs. 123, 124.    A dismissal of the suit as to one of the defendants placed him out of court as if he had never been brought in.    *Bank v. Cottey,* 70 Mo. 150. (6) And the same rule has been applied where the suit was originally brought against the maker and his accommodation indorsers, and subsequently dismissed as to the former and prosecuted to judgment as to the latter.    *Faulkner v. Faulkner,* 73 Mo. 327; *Young v. Brown,* 10 Iowa, 537.

GANTT, J.—This action was originally commenced against John B. Bancroft as maker, and Howard M. Holden as indorser, of the following note:

"$4,000.                        CHICAGO, October 6, 1888.

"On the first day of July, 1889, after date, I promise to pay to the order of the Union Tie Company, Chicago, $4,000 at room 70, Home Insurance Building, Chicago, Illinois, value received.

"No. 9995.                        JOHN D. BANCROFT."

Indorsed: "Union Tie Company, J. D. Bancroft, Treasurer. Pay to the order of D. M. Clough, Esq., Howard M. Holden, Kansas City, Mo. D. M. Clough. Pay D. Hoyt, cashier or order, for collection, account of Bank of Minneapolis, M. Bofferding, Cashier."

This last indorsement was erased when the action was begun.

John D. Bancroft, the maker, entered his voluntary appearance to the cause and filed his answer. Holden, the indorser, was duly served in Jackson county and filed his answer.

After the issues were made up, Bancroft applied for a change of venue, pending which the plaintiff dismissed as to him, to which action of the court, defendant Holden excepted.

The answer of defendant Holden contained first, a general denial and these special defenses:

"2. This defendant, for his further answer to said petition, states that it is true that the said Bancroft made and the said Holden indorsed the note described in said petition, but defendant further states that he was merely an accommodation indorser, and that he had no greater or further interest in said note than as accommodation indorser for the said Bancroft.

"3. This defendant further states that the said note was obtained from the said Bancroft by fraud and misrepresentation and without consideration, and that the plaintiff at the time he took said note knew that the same had been obtained from said Bancroft by fraud and misrepresentation and without consideration, and that he never paid value for the same, and that said Holden was merely an accommodation indorser on said note.

"4. This defendant, further answering, states that plaintiff in this cause did institute suit against him and the said John D. Bancroft, the maker of said note. That since the institution of said suit, and after answer filed by said Bancroft, plaintiff has dismissed his action and refuses further to prosecute his action against the said Bancroft.

"Wherefore this defendant, having fully answered, asks to be hence discharged with his costs in this behalf created."

To this answer plaintiff filed the following reply:

"The plaintiff, for amended reply to the answer of defendant in the above entitled cause, says it is true that the defendant Bancroft made and the said Holden indorsed the said note described in the petition, but denies each and every other allegation contained in said answer and says that for value received before the maturity thereof the said note was indorsed and delivered to this plaintiff and he is now the owner and holder thereof in good faith, without any knowledge then or now that there was any fraud or defect, or failure of consideration in any wise connected with said note, and prays judgment as in the petition."

The trial resulted in a judgment for plaintiff, from which defendant Holden has appealed to this court. The errors assigned will be considered in the order in which it is alleged they occurred.

I. To sustain his case against defendant Holden as an indorser, plaintiff offered a copy of the note with all the indorsements thereon as above set forth, with the following certificate of protest:

"STATE OF ILLINOIS, }
                      } ss.
  Cook County.        }

"Be it known, that on this third day of July, in the year of our Lord, 1889, I, Ben S. Mayer, notary public, duly commissioned and sworn and residing in Chicago, in said county and state, at the request of the Continental National Bank, went with the original note, of which a true copy is above written, to the *office* of John D. Bancroft, room 70, Home Insurance Building, at 5:20 P. M., to demand payment thereon and found the door locked, whereupon I, the said notary at the request of the aforesaid did protest," etc. Which certificate was duly signed by the notary, and sworn to before Howard Rope, another notary.

To the introduction of this certificate of protest, defendant objected, for the reason that it appeared the note was payable *at an office, room 70, in an insurance building*, and the certificate does not recite that this note was presented during business hours; that it could not be said, as a matter of law, that 5:20 P. M. was within business hours.

The court overruled this objection, to which defendant excepted.

Defendant afterwards called Thomas Wright, and this witness having testified, that he was and had been a resident of Chicago for a year and a half, and knew the location of the Home Insurance Building in said city, he was asked what were the ordinary business hours in Chicago, and within what hours business men could usually be found in their offices. The court refused to permit him to answer the question. After repeated efforts to show the custom as to business hours all of which were overruled by the court, "defendant offered to prove by this witness that this presentation and demand for payment was not made in the usual business hours of office men and business men in the city of Chicago," which was by the court excluded and defendant excepted. The admission of the certificate over objection and the rejection of the evidence to show that a demand for payment, *made at 5:20 p. m., was not within business hours,* presents the question very clearly in two aspects.

The note sued on was made payable at a specified business place. If a negotiable promissory note or bill of exchange is made payable *at a particular bank,* presentment for payment must be made at said bank *during banking hours.* Tiedeman on Commercial Paper, sec. 317; 1 Daniel on Negotiable Instruments, sec. 600; Story on Promissory Notes [7 Ed.] secs. 226, 227; Story on Bills of Exchange, secs. 236–349; *Swan*

*v. Hodges*, 3 Head. (Tenn.) 251.    And it is well settled that if a promissory note *is payable at a particular business place, whether a bank or not, it will be sufficient* for the holder, in order to charge the indorser, to present the same for payment at the specified place within business hours, and he is under no obligation in case of *dishonor, at that place*, to present it for payment elsewhere, or personally to the maker. *Lawrence v. Dobyns*, 30 Mo. 196; 1 Daniel on Negotiable Instruments, sec. 635; Story on Promissory Notes, sec. 234; *Sulzbacher v. Bank*, 86 Tenn. 201; *Brent's Ex'r v. Bank*, 1 Pet. (U. S.) 92; *Cox v. Bank*, 100 U. S. 716; *Hawkey v. Borwick*, 4 Bing. (13 E. C. L. R.) 136; *Bank v. Smith*, 11 Wheat. 171.

That the note in question was presented at the place designated, the office of Bancroft, room number 70, Home Insurance Building, Chicago, on the day it matured, does not admit of question.  On this point the notary's certificate is explicit, but the defendant insisted the certificate of protest was insufficient in not stating that he presented the note within business hours. He states that he presented it at 5:20 o'clock P. M.    The certificate is sufficient on its face to raise the presumption that he made the demand within business hours. *Sulzbacher v. Bank*, 86 Tenn. 205; *Baumgardner v. Reeves*, 35 Pa. St. 250; *Wiseman v. Chiappella*, 23 How. (U. S.) 368, 379, 80; *Burbank v. Beach*, 15 Barb. 326; *Bank v. Hunt*, 2 Hill, 635.

In these cases in the supreme courts of United States and New York, the certificate was general, and the courts ruled the presumption was, that the notary had made the presentment during business hours.  We take it that 5:20 P. M. is not such an unusual hour that this court would be justified in holding, as a matter of law, that it was not within business hours in Chicago.

"American courts are wont to take judicial notice of the banking hours of any large city lying within the area of the jurisdiction of the court; though there is no authority for supposing that the banking hours of the city of New York would be considered as judicially known to the courts of Boston or Chicago, or *vice versa. Unquestionably proof would have to be introduced.*" Daniel on Negotiable Instruments, sec. 601; Morse on Banking, 371. But, although the notary's certificate is *prima facie* evidence that the note was presented for payment in business hours, it is only *prima facie.*

This brings us to the point of controversy in this case, the action of the trial court in refusing to permit the appellant to show *that 5.20 p. m. was not within business hours* in Chicago. It will be observed that the competency of the witness to speak as to the custom was not challenged because he had not qualified himself. The objection was not to the competency of the witness but of his testimony. It is too late to raise the question of personal disqualification for the first time in this court. *Seligman v. Rogers,* 113 Mo. 642.

The ruling of the court was made squarely upon the subject-matter of the proposed evidence. If the evidence was competent, then it was error to exclude it, because it fully met the requirement in that the inquiry was as to the general hours of business in Chicago, *among business and office men.* The question itself suggested its materiality, but counsel, unwilling to risk that went further and made the offer of proof, which clearly shows it was material, thus complying with the rule announced in *Jackson v. Hardin,* 83 Mo. 178–186; Thompson on Bills, 302; 1 Daniel on Negotiable Instruments, sec. 601.

"When presentment is at the place of *business, it must be during the hours when such places are customarily*

*open or at least while someone is there competent to give· an answer*. It is only when presentment is at the residence that the time is extended to the hours of rest." Daniel on Negotiable Instruments, 603. The rule thus announced by Mr. Daniel is approved by the· other text writers on commercial law generally.

The question, it must be remembered, is not whether a demand actually made on Bancroft on the day in question after business hours *would be good*, but is a call at his business office, *after the expiration of business hours, after it was closed for the day*, with no other effort to find him, a sufficient presentment to· dishonor the bill and hold the 'indorser? In other· words can a party invoke the right to this *constructive demand*, without making it within business hours? We think that both reason and the authorities generally hold that *such a presentment is not sufficient* to bind the indorser. *Dana v. Sawyer*, 22 Me. 244; *Parker v. Gordon* 7 East, 385; *Shed v. Brett*, 1 Pick. (Mass.) 412; *Baumgardner. v. Reeves*, 35 Pa. St. 250; *Swan v. Hodges*, 3 Head (Tenn.) 251; *Wiseman ɩ. Chiappella*, 23 How. (U. S.) 268-380; Story on Bills of Exchange [4 Ed.] sec. 236; Bayley on Bills [5 Ed.] ch. 7, sec. 1, p. 199. The rule is tersely stated by THOMPSON J., in *Baumgardner v. Reeves*, *supra:* "It is the duty of a notary when he receives a bill or note, intended to be· protested, to make demand of the party primarily liable *at his usual place of business, within business hours*." In *Elford v. Teed*, 1 Maule & Selwyn, 28, Lord ELLENBOROUGH, C. J., said, "There was *not any text-writer* upon whose authority a presentment of a bill by a notary at a house of business, after it was closed, could be sustained. It is laid down in *Marius*, that it must be made during times of business, at such seasonable hours as a man is bound to attend.

by analogy to the *horae juridicae* of the courts of justice." Marius [2 Ed.] 187.

To this line of authorities respondent opposes the case of *Skelton v. Dustin*, 92 Ill. 49–54.

We have examined that case with care, and we cannot find anything in the decision, based upon the facts of the case, that is in conflict with the view we have taken of the law on this subject. That part of the opinion relating to the point under discussion is as follows: "It is said that a bill of exchange should be presented for payment on the day it is payable during the business hours on that day, *Strong v. King*, 35 Ill. 9; and it is claimed, therefore, that it must be affirmatively shown, which it is said was not done in this case, that the bill was so presented during business hours."

*The only evidence there* is as to the time of day the bill was presented for payment is found in the notarial certificate of protest, which states that the notary "after the close of the bank presented the same (the bill) at the office of W. C. Barrett & Co., Indianapolis, Indiana, and demanded payment thereof, the time limited for payment having expired." "The certificate is presumptive evidence of presentment *during the proper hours of business*. These, except where the paper is due from a bank, for the purpose of presenting a note or bill for payment, *range through* the whole day down to *bedtime in the evening*." *Bank v. Hunt*, 2 Hill, 635; *Farnsworth v. Allen*, 4 Gray, 453; Edwards on Bills, 536. "There is no evidence that W. C. Barrett & Co. were bankers. The statement that the 'time limited for payment had expired,' does not import, as contended, that the presentment for payment *was after the close of business hours*." "It means no more than that payment of the bill had become due." To all of which we assent. That case holds, as we have already held that the certificate of the notary was *prima facie evidence*

that the note was presented *"during the proper hours of business."* In that case, the defendant relied upon the objection to the certificate. In this case when that objection was overruled defendant offered to show affirmatively that the presentment was not within business hours. No such proof was offered in *Skelton v. Dustin.*

Nor do we question that in different communities "business hours *range* through the whole day down to bedtime." It is for this reason that we think it is competent and proper to allow the indorser to show what range they took in the city of Chicago at the time this presentment was made or attempted to be made. Mr. Daniel lays it down in section 601, Negotiable Instruments, that, "It is for the jury to say what are business hours, and in fixing them otherwise than in reference to the banks they are to have reference to the general hours of business at the place rather than to the custom of any particular trade." Certainly the authorities cited by the supreme court of Illinois in no way militate against the views we have taken.

In *Bank v. Hunt,* Judge Cowen begins his opinion with the statement, that *"The bill of exchange was payable generally, mentioning no place."* No objection was made at the trial that the presentment which was made at number 4, Wall street, where the survivor transacted business, should have been at his residence or any place, "nor was any made to the manner of presentment or the day." He holds that the notary's certificate is *prima facie* evidence that the demand was made at a proper time in the day. If an improper time, it was for the opposite party by cross-examination *or otherwise to show it.*

In *Farnsworth v. Allen,* 4 Gray, 453, no place of payment was named in the note. The notary on the

last day of grace presented it to the maker at his resi-
dence after he had retired. It was held good.
BIGELOW, J., said: "The note declared on, *not being
payable at a bank or at any place where business was
transacted during certain stated hours in each day*, was
properly presented to the maker at his place of resi-
dence;" but even in that case the learned judge held
that such a note ought to be presented within reason-
able hours, and he concludes that nine o'clock on the
twenty-third of August is not unreasonable, when it
was found necessary to drive nine miles into the
country to find the makers.

Edwards on Bills, section 716, is the remaining cita-
tion. The author says: "Where a note is not drawn
payable at a particular place or at a bank, a demand
may be made upon the maker at his residence at any
time before the usual hours of rest." But a reference
to the work will show that the author is discussing at
this place the right of the maker to the whole day in
which to pay, and that a suit brought during the last
day of grace is premature. At section 719, in discuss-
ing the point we have under consideration, he says:
"When payable at a bank they should be presented
before the hour of closing business of that kind for the
day," or "when payable at the counting-room, office or
store of the maker or acceptor they *should be presented
there within the usual hours of business.*"

Judge RAPALLO in *Bank v. Burton*, 58 N. Y. 430,
refers to *Parker v. Gordon*, 7 East, 387, and *Elford v.
Teed*, 1 Maule & Selwyn, 28, as the cases upon which
the law of presentment of commercial paper is based.
Lord Ellenborough himself qualified his own opinion
to this extent that a presentment at a bank after
banking. hours was sufficient, provided a person was
stationed there by the banker to return an answer.

That case and *Bank v. Halliston* stand upon their own peculiar facts, but nowhere is it intimated in either that the court has departed from the general rule.

WOODRUFF, J., in *Newark India Rubber Mfg. Co. v. Bishop*, 3 E. D. Smith, 48, commenting upon *Garrett v. Woodcock*, 1 Stark. 475, says, "It proceeds upon the distinct ground that, if a banker appoint a person to attend in order to give an answer, a presentment would be sufficient if made before twelve o'clock at night;" but he insists that the general rule is not at all repudiated by that case but rather affirmed. See authorities cited, *loc. cit.*, p. 54.

Our conclusion is that the evidence is material and competent, and the court committed reversible error in excluding it.

II. For the reason that the evidence was admissible it follows that the instruction was too narrow, in that it did not require the jury to find that the note had been presented for payment to the maker within business hours at his place of business, but only required the jury to find that notice of protest had been given to the defendant Holden. His liability was conditioned upon the proper demand upon John D. Bancroft.

III. The remaining point for decision is one of pleading. Under his answer, and to sustain the third paragraph thereof, defendant offered John D. Bancroft, as the maker of the note, as a witness. After Bancroft had testified that the note in suit was a renewal of two former notes given by him to one Warren H. Leland, aggregating $6,892.09, and had testified that fraud had been perpetrated on him by Leland in obtaining *said notes*, and that Clough, the plaintiff, knew it when he reduced the notes to $4,000, the amount of the one in suit, the court over the objection of counsel for defendant permitted counsel for plaintiff to take the

witness and identify four letters from the witness to Clough and read the same to the jury. In these letters Bancroft agrees to give the $4,000 note in suit and $500 in cash for the two notes previously given to Leland, June 23, 1888. *He tells Clough in his letters that Leland had cheated, defrauded and duped him, Bancroft,* but he disliked to see Clough suffer, and accordingly offers this settlement. These negotiations result in Clough taking this note and surrendering the old notes and $10,000 stock in Chippewa Lumber Company.

Defendant, after all this evidence was in, without objection from plaintiff, offered to show that Clough and Leland were partners in all these transactions, and that Clough was a party to the fraud by which Leland obtained the original notes, but that Bancroft was ignorant of these facts when he gave the note in suit; and he made this proposal: "I propose to show by this witness that the consideration *of the original notes wholly failed and were without consideration, and that at the time they were given they were given for property,* or an interest in property sold by Leland to Bancroft; that Clough was part owner and a partner of Leland at the time of the sale of that property to Bancroft and was acting for and in behalf of Leland at the time this property was sold; and that these notes were then transferred to Clough, and that Bancroft, without notice of the fact at that time of the extent to which he had been deceived as to the consideration of the note—as to the amount of property which was turned over in payment of the note—made this settlement and gave this new note for the others to Clough, and that Clough had full notice at the time the original notes were given in law and in fact of the consideration of these notes as well as the note that was in suit. We offer to prove that."

To which plaintiff objected as incompetent and not pleaded in the answer. Which objection the court sustained and defendants duly excepted.

Counsel for defendant then went further and offered to show that the original notes were given for property which Leland represented was in existence but did not exist; that he did not have the property; that Bancroft relied on his representations and gave the note for it; that the property was represented to be a new saw mill, and certain lumber and shingles and certain timber in the forest at Point au Frene, Michigan. These notes were given in consideration of the sale of this alleged amount of property; that Mr. Bancroft was ignorant himself as to the value of this property or the amount of it, and was deceived and swindled by these representations, and that he gave these notes after that. *When these notes became due they turned up in the possession of and in the custody of Clough, who claimed to be the owner of them. He then supposed that Clough had bought them in good faith* and made this settlement with him by giving him a new note, when Clough, as a matter of fact, was a partner in this all the time with Leland. That is the offer.

"The Court: I don't think the answer is sufficient to raise any question of fraud, and the offer is excluded."

To which action of the court in refusing to admit the testimony offered, the defendant then and there duly excepted.

The answer alleged that the note in suit was obtained from Bancroft, the maker, by fraud and misrepresentation, and without consideration, and that plaintiff knew it had been so obtained and that he never paid value for the same.

Was it competent under such an answer to prove the facts, which defendant offered to prove in regard to the original notes? We think not. The pleader

saw fit to confine his charge of fraud *to the note in suit*. Had he only offered to show that the note in suit was obtained by fraud, the evidence would have been competent under his general allegation of fraud under the rule in *Edgell v. Sigerson*, 20 Mo. 494; but it is not reasonable that under such an answer the plaintiff would expect to be prepared to meet charges of fraud in a remote transaction out of which this note finally grew, and to the obtaining of which plaintiff was ostensibly, at least, a stranger.

If defendant desired to show that the note in suit had no other consideration than the two notes to Leland; that plaintiff was in fact a party to the fraud in obtaining them, and that the said two notes were without consideration, or had wholly failed, it was his duty by an appropriate answer to state *these facts*, and advise the plaintiff of the defense on which he expected to rely.

The present answer is not sufficient for that purpose either at common law or under the code, and the trial court properly so held. It may be as well to remark that the cases of *Edgell v. Sigerson*, 20 Mo. 494; *Smalley v. Hale*, 37 Mo. 102; and *Fox v. Webster*, 46 Mo. 181 have never been overruled, but they only held, that pleas of fraud *in general terms* were good in answer, and when the fraud charged referred only to matters stated in the petition. The bare allegation of fraud has never been sustained as sufficient in a petition under our code, either in law or equity. We have always required the facts constituting the fraud to be averred. A satisfactory reason for the distinction between an answer or other pleading and a petition, in this respect, would be hard to give. The writer will not attempt one. Bliss on Code Pleading, sec. 339.

The cases of *Reed v. Bott*, 100 Mo. 62; *Hoester v. Sammelmann*, 101 Mo. 619, were causes in equity, and

what was said in them in regard to pleading was intended to refer to pleading in equity, though neither of the judges who wrote them thought necessary to advert to the distinction.

It becomes unnecessary to discuss the other propositions referred to in the brief of respondents for the reason that we cannot anticipate, either that defendant will not tender back the old notes and Chippewa Lumber Company stock or that plaintiff will rely upon the compromise. It will be ample time to pass upon those questions when they are fairly in the record.

The judgment is reversed and the cause remanded for a new trial, in accordance herewith. All concur, except SHERWOOD, J., who dissents, and BARCLAY, J., who concurs in the judgment on the ground stated in the first paragraph of the opinion of the court; but he dissents from the third paragraph and refers to his opinion in *Reed v. Bott* (1889), 100 Mo. 67, for a statement of his views upon the point of difference.

SHERWOOD, J. *(dissenting.)*—Action on a negotiable promissory note for $4,000, of which the defendant is indorser. Bancroft, the maker, was also sued, but the cause was dismissed as to him prior to trial. The substance of the petition is as follows: The note was dated Chicago, October 6, 1888, and by it Bancroft promised to pay to the order of the Union Tie Company, Chicago, said sum on the first day of July, 1889, at room 70, Home Insurance Building, Chicago, Illinois.

Before maturity the tie company, for value, indorsed and delivered the note to defendant, who, for value, and before maturity, indorsed and delivered the same to plaintiff, who afterwards, for value, indorsed and delivered said note to the Bank of Minneapolis, and the latter indorsed the same to the Continental

National bank, of Chicago, Illinois, for collection, and at maturity the note was presented to plaintiff as therein provided for payment, which was refused.

Allegations of protest and notice are then made, resulting finally in plaintiff having to take up the note from the Bank of Minneapolis and become thereby legal owner of the same. The answer was a general denial.

It also set forth that defendant was a mere accommodation indorser for the maker Bancroft. The answer concludes thus: "This defendant further states that the said note was obtained from the said Bancroft by fraud and misrepresentation and without consideration, and that the plaintiff at the time he took said note knew that the same had been obtained from said Bancroft by fraud and misrepresentation and without consideration, and that he never paid value for the same, and that said Holden was merely an accommodation indorser of said note."

The reply in effect was a general denial, and also alleged that the note before maturity was, for value received, indorsed and delivered to plaintiff, and that he is now the owner and holder thereof in good faith, without any knowledge of fraud, defect or failure of consideration.

The trial resulted in a verdict for the plaintiff for the principal of the note, interest, etc., and the defendant appeals.

Various errors are assigned, to-wit: An erroneous instruction given for plaintiff; exclusion of testimony offered by and refusal of instructions asked by defendant.

It appeared by the testimony of Bancroft that the note sued on was given in renewal of certain other notes held by plaintiff, and defendant offered evidence to the effect that said notes for which the one sued on was executed in renewal were given in part payment of the

price of a lumber camp and mill sold by one Leland to said Bancroft; that said Leland had misrepresented the quantity and quality of the lumber on hand and the value of the property; that, though Bancroft had discovered this fraud before the execution of the notes sued on, he believed the plaintiff was not connected therewith and that he was an innocent holder of said notes for value, and that after executing the note sued on, he discovered that plaintiff had been a party to the fraud. This testimony the court refused to admit, on the ground that the fraud had not been sufficiently pleaded. The correspondence that passed between plaintiff and Bancroft offered in evidence by respondent showed however that Bancroft had been greatly defrauded and that the compromise which was then made, wherein Clough accepted $500 in cash and a secured note for $4,000 in exchange for $6,900 of doubtful paper, was grounded wholly on Bancroft's disability resulting from the losses he had incurred because of his transactions with Leland, and did not involve any question of the *bona fides* of Clough's ownership of the notes, that matter not then being at issue between Clough and Bancroft and not then being suspected by Bancroft; but, after the note sued on had been given, Bancroft discovered that Clough was a full partner with Leland and equally guilty with Leland in the frauds that had been practiced, and that therefore the note was equally without consideration in Clough's hands as it would have been in Leland's hands, and defendant offered and sought to prove these facts on the trial of the case, but was not permitted by the court to do so.

It also appeared from letters of Bancroft, read in evidence by plaintiff that the proposal to compromise which was afterwards effectuated by plaintiff surrendering the notes for $6,900 and $10,000 in stock which he

held as collateral security for said notes, and receiving in lieu thereof the litigated note and $500 cash, came from Bancroft to plaintiff.   These letters were dated at the office in Chicago mentioned in the notary's certificate of protest.   And these letters also show that the note was signed by the maker at Chicago, sent to Holden at Kansas City to be indorsed, returned by Holden to Bancroft at Chicago, and sent from there by Bancroft to Clough at Minneapolis.

The notarial certificate is in usual form; the only portion necessary to quote is that the notary "went with the original note, of which a true copy is above written, to the office of John D. Bancroft, room 70, Home Insurance Building at 5:20 . P. M. to demand payment thereon and found the door locked,   *   *   * whereupon I, the said notary, at the request of the aforesaid did protest."

I.  The first point considered will be the admissibility of testimony offered by defendant to show fraud in Leland in procuring the execution by Bancroft to him of the original notes for $6,900 and the connection of plaintiff therewith.   There are several answers to the contention that such testimoney was admissible as, *e. g.*:

(1) In the first place there *was no such fraud pleaded*.   The fraud relied on was that charged in the answer as being connected with the *note in suit*, and of course it would be violative of all rules of pleading to allow a party defendant to plead one fraud and then at the trial to prove another.

(2) Besides the testimony offered had no tendency to show that the note in litigation had been obtained by fraud or misrepresentation.   That note and the $500 in cash were given and the notes for $6,900 and the $10,000 collateral were surrendered as the result of Bancroft's own offer.

(3) That the surrender of the old notes and collateral prevented litigation appears clearly from the letters mentioned, and from them it also appears that Bancroft received *something valuable* from Leland in exchange for the $6,900 in notes. The law favors the settlement of disputes, and the mere "prevention of litigation is not only a sufficient but a highly favored consideration, and no investigation into the character or value of the different claims submitted will be entered into for the purpose of setting aside a compromise, it being sufficient if the parties entering into the compromise thought at the time that there was a question between them." 1 Parsons on Contracts [7 Ed.] 468. Upon this basis the compromise of a doubtful claim has been upheld where the settlement of conflicting titles was held a sufficient consideration to support a purchase by one party, although the title he thus purchased was afterwards found out to be bad. *Cavode v. McKelvey*, Addison, 56. So, too, a compromise in an action for slander was upheld, as upon sufficient consideration, for the promise to pay a certain sum though the words laid in the declaration were *not actionable*. *O'Keson v. Barclay*, 2 Pa. 531.

(4) As long as that compromise between Bancroft and plaintiff remained intact, it was a complete barrier to any defense Bancroft himself could make against an action on the note which resulted from that compromise. And the only way in which, and condition precedent upon which, Bancroft could have defended against that note was by rescinding the contract of compromise and surrendering its fruits, thus placing plaintiff *in statu quo*.

Until repudiation of the compromise contract had thus occurred there would be no ground on which the maker could defend an action on the note and prevent a recovery. *Jarrett v. Morton*, 44 Mo. 275; 1 Daniel on

Negotiable Instruments [4 Ed.] sec. 193; Bigelow on Law of Fraud, 75, *et seq.*

"Something must then be done by the party defrauded before the contract can cease to be binding; * * * so that it is specific performance reversed, the literal undoing * * * of the contract." 1 Bigelow on Law of Fraud, 74. See also, 2 Chitty on Contracts [11 Am. Ed.] 1089, note m, 1092; *Ackerman v. McShane*, 9 South. Rep. 483; *Kinne v. Webb*, 49 Fed. Rep. 512.

(5) And if a party defrauded would exercise the right to rescind he must do so *promptly* on discovery of the fraud. *Masson v. Boyet*, 1 Denio, 69; *Selway v. Fogg*, 5 M. & W. 83; *Railroad v. Row*, 24 Wend. 74; *Jarrett v. Morton, supra; Estes v. Reynolds*, 75 Mo. 563; *Hart v. Handlin*, 43 Mo. 171.

No evidence was offered in this case of a rescission or offer to rescind, nor at what time the alleged connection of plaintiff with the fraud practiced by Leland was, or could by reasonable diligence have been, discovered. 1 Bigelow on Law of Fraud, 438.

(6) If Bancroft the maker could not successfully plead fraud in the original contract unless upon performance of the condition precedent of rescission or offer to rescind the subsequent one, assuredly the defendant indorser could not in any event, in the absence of such rescission, be in any better condition.

(7) Again, it is only the *party injured* by the fraud can claim active relief (Bigelow on Law of Fraud, 197, 209), and only then upon the terms already stated. Here, defendant cannot justly claim to occupy any such position, and at any rate he could not raise the question of fraud in the original contract, so long as the substituted contract evidenced and represented by the note in suit remains unrescinded and in full force. In which case, the transaction, in legal contemplation,

stands upon as secure a foundation of valuable consideration as any other contract whatsoever.

(8) In circumstances such as already related, it does not lie in the mouth of defendant to plead that he is merely an accomodation indorser of the note, and that the same is without consideration.

(9) Indeed he cannot be regarded as an accomodation indorser for the further reason that the note is no longer in first hands. *Miller v. Mellier*, 59 Mo. 388; *Faulkner v. Faulkner*, 73 Mo. 327; 1 Daniel on Negotiable Instruments, sec. 189.

II. The next point for consideration is whether error occurred in reference to an offer of testimony to show that the note was presented after business hours, and if so, whether the presentment was valid. The authorities all agree that a note or bill made payable at *a bank* must be presented during banking hours, but, with reference to paper payable at a place other than a bank, the rule does not seem to be so well settled.

This divergence is recognized in *Swan v. Hodges*, 3 Head, 251, a case relied on by defendant; and Byles on Bills, 262, and Story's Promissory Notes, 226, are there cited to show this variance in the adjudicated cases.

In *Bank v. Hunt*, 2 Hill, 635; *Nelson v. Fotterall*, 7 Leigh, 179; *Dana v. Sawyer*, 22 Me. 244; *Bank v. Burton*, 58 N. Y. 430; *DeWolf v. Murray*, 2 Sandf. 166, the rule is announced that, aside from banks, business hours range through the whole day down to the hours of rest in the evening. To the same effect see 1 Daniel on Negotiable Instruments [4 Ed.] sec. 602.

Other cases announce the same doctrine. Thus a bill payable at the office of an attorney was held presented "in quite reasonable time" as remarked by BEST, C. J., though presented at eight o'clock in the

evening in the month of February.  *Triggs v. Newnham* 1 C. & P. 631.

Lord Ellenborough, in *Morgan v. Davison*, 1 Starkie, 114, ruled that a bill payable at a counting house was presented at a proper time, though presented between six and seven o'clock in the evening, when no one was left there but a girl to take care of the premises.

In another case the note was made payable at "number 15, Godliman street, Doctor's Commons." It wes presented between seven and eight o'clock in the evening when the door was found locked, and the messenger unable upon knocking to obtain admission, and LORD TENTERDEN, C. J., after adverting to the well-known custom in regard to bankers, requiring presentment should be made within business hours, said that, "in other cases the rule of law is, that the bill must be presented at a reasonable hour;" and it was accordingly ruled that the presentment was made in a reasonable time.  *Wilkins v. Jadis*, 2 B. & Ad. 188.

In *Barclay v. Bailey*, 2 Campb. 527, LORD ELLENBOROUGH, who had at an earlier date delivered the opinion in *Parker v. Gordon*, 7 East, 385, relied on by defendant, and at a subsequent date the opinion in *Morgan v. Davison, supra*, held that a bill payable at the residence of the drawee and presented at eight o'clock in the evening, was not presented at an unseasonable hour.

The case of *Parker v. Gordon, supra*, was a bill made payable *at a banker's*, and therefore without relevancy here.

The cases of *Shed v. Brett*, 1 Pick. 412; *Dana v. Sawyer*, 22 Me. 244; *Lunt v. Adams*, 17 Me. 230; *Baumgardner v. Reeves*, 35 Pa. St. 250; *Sulzbacher v. Bank*, 86 Tenn. 201, sustain the view that presentment at a place other than a bank must be made during business

hours. Of the two cases cited from Maine, the first one cited was where the presentment was made a few minutes before midnight, the maker being awakened at his residence, and the other where it was made at eight o'clock, A. M., at the maker's storehouses, and held insufficient in both instances. In *Shed v. Brett, supra*, "the note not being made payable at the counting-house of the promisors," and both of them residing in Boston, it was held proper diligence had not been used where the notary witness went to the business house and found it shut, but it did not appear that this was during business hours nor that he made proper inquiry for the places of residence of the promisors.

*Swan v. Hodges*, 3 Head, 251, cited by defendant, is a *bank* case, but it announces the doctrine that: "Business hours, however, except in the case of banks, include the whole day unless there be some known custom or usage of trade to the contrary." An eminent jurist and author gives utterance to the same idea. Story on Promissory Notes [3 Ed.] sec. 226.

In the absence of such *known custom or usage*, then a presentment if made within reasonable hours is sufficient. Story on Promissory Notes [3 Ed.] sec. 226. And it has been often ruled that if the certificate of the notary contains the averment that he called at the maker's or acceptor's place of business to make demand is sufficient; if he be not there to respond, the presumption is that the demand was made in business hours. *Sulzbacher v. Bank*, 86 Tenn. 201; *Baumgardner v. Reeves, supra; Wiseman v. Chiappella*, 23 How. U. S. 368; *Wallace v. Crilley*, 46 Wis. 577.

In the present instance the offer was to show, "that this presentation was not made in usual hours of office men and business men of the city of Chicago." No proper foundation for the introduction of this testimony was laid, however, by showing that the witness, who had

resided in Chicago for a year and a half, was acquainted with a well known usage or custom in that city as to the time presentments were accustomed to be made.

Unless such a foundation were laid, his testimony would, if received, have been valueless and immaterial, and no error occurred in rejecting it. *Bank v. Aull*, 80 Mo. 199; *State v. Douglass*, 81 Mo. 231; *State ex rel. v. Leland*, 82 Mo. 260; *Jackson v. Hardin*, 83 Mo. 187; *Kraxberger v. Roiter*, 91 Mo. 404. Besides testimony which is to establish a known usage which would limit the reasonable hours in which presentment and claim could be made would have to be of a very satisfactory and cogent character. 2 Daniel on Negotiable Instruments, sec. 1013. And it is a matter within judicial notice that 5:20 P. M., on the third day of July, was long before sunset, and not an unreasonable hour at which to make presentment and demand under the rule announced by the authorities already cited.

But apart from all other considerations is the controlling one, that the note in question being drawn and made payable in Chicago, Illinois, is to be governed as to the time and manner and the sufficiency of its presentment, demand and protest by the laws of that state. 1 Daniel on Negotiable Instruments, secs. 911, 912; *Wooley v. Lyon*, 117 Ill. 244.

The supreme court of the state of Illinois has adopted the rule already announced in some of the cases above cited, that the certificate is presumptive evidence of presentment during proper hours of business, and that such hours except in case of bank paper range through the whole day down to bedtime in the evening. *Skelton v. Dustin*, 92 Ill. 49. This direct ruling by the court of last resort in that state must be held to be conclusive of the question. *Roquette v. Overmann*, L. R. 10 Q. B. 525.

In concluding this paragraph we shall follow the ruling of the supreme court of Illinois, indulge the usual presumptions aforesaid in favor of the presentment and demand made by the notary, and hold them to have been made at a reasonable hour, and therefore properly admitted in evidence.

III. Holding this view it must result that the plaintiff has made out such a case as would warrant a direction to the jury to find in his favor.

On this theory it becomes unnecessary to closely scan the instruction which the court gave at his instance. Because whether instructions are erroneously given or refused, becomes immaterial if a peremptory instruction to the jury to find for the successful party would have been sustained. *Fitzgerald v. Barker*, 96 Mo. *loc. cit.* 666; *Brobst v. Brock*, 10 Wall. 519; 2 Thompson on Trials, sec. 2265.

IV. Some question has been raised as to the right of plaintiff to dismiss his action as to Bancroft, the maker, but of this there can be no doubt under statutory provisions. 1 Revised Statutes, secs. 2384, 2387; 1 McQuillin's Missouri Practice, secs. 123, 124.

For the foregoing reasons the judgment should be affirmed.

As I do not concur in the conclusion reached that the judgment in this cause should be reversed, I have herewith filed as reasons for my dissent herein the original opinion filed by me in Division number one of this court, and which received at the time the unanimous assent of all the members of that division, and now add thereto these additional remarks:

That opinion has been followed *sub modo* by the majority as to paragraph 1, which in effect declares that you cannot plead one fraud and prove another; but, when the majority come to the question discussed both in the brief of plaintiff and in that of defendant in

his motion for rehearing, as to the necessity of rescission or offering to rescind the compromise contract in order to make the plea of fraud good, as all the authorities hold, it is said:

"It becomes unnecessary to discuss the other propositions referred to in the brief of respondents for the reason that we cannot anticipate either that defendant will not tender back the old notes and Chippewa Lumber Company stock nor that plaintiff will rely upon the compromise. It will be ample time to pass upon those questions when they are fairly in the record."

But if, as the authorities show, after a contract of compromise has been entered into, the fraud in securing that contract cannot be successfully pleaded without being coupled with a plea of recission or offer to rescind that contract, and as both parties discuss the point in their briefs, it seems to me it was absolutely necessary for this court to rule the point, unless it is thought advisable to compel the parties to come back again to this court in order to learn whether a plea of fraud in making a contract is good uncoupled with a return or offer to return that which was obtained under that fraudulent contract.

Here we have the plaintiffs contending that rescission or offer to rescind is absolutely necessary, the defendant denying this; in such circumstances of antagnonism it really does not seem that it would require any very great stretch of either inference or imagination to "*anticipate*" "that defendant will not tender back the old notes," etc., or that plaintiff will rely upon the compromise contract. But the necessity of such return or offer to return is "*fairly in the record*," if it be true that, in the circumstances stated, the plea of fraud is *not good*, where it stands alone uncoupled with the averment aforesaid. And where a petition or

answer is bad on its face, though no objection be raised to its sufficiency, this court of its own motion will raise and rule the point here for the first time. *Walker v. Bradbury*, 57 Mo. 66; *Smith v. Burrus*, 106 Mo. *loc. cit.* 97, and cases cited.

