KNAPP, STOUT & CO. COMPANY, Appellant, v. ST. LOUIS et al.

### Division Two, January 23, 1900.

1. **Vacating Street:** PECULIAR INJURY. In order to entitle a property owner to relief against the attempt of the city of St. Louis to vacate a street, he must allege and prove that he owns property abutting on that part of the street which the ordinance vacates, and that he will suffer a special injury and not merely such inconvenience as is cast upon all other persons in that neighborhood. And unless the petition for injunctive relief avers that the plaintiff's lot abuts on the street to be vacated or states facts from which that may be inferred, it is fatally defective on demurrer.

2. ————: FRAUD. A private citizen owning property abutting on a St. Louis street which is vacated by city ordinance, may show that the ordinance for that purpose was passed by fraud or corruption. But an averment that the ordinance was not passed for a public purpose, that its sole purpose was to give to a private manufacturing company the vacated street for the use of its mills, is not an averment of fraud.

Appeal from St. Louis City Circuit Court.—*Hon. Leroy B. Valliant,* Judge.

AFFIRMED.

*Lubke & Muench* for appellant.

(1)  By interposing the demurrers to appellant's petition the respondents conceded the truth of all the averments of the petition.  Shields .v. Johnson Co., 144 Mo. 77; Dodson v. Lomax, 113 Mo. 555; McGinnis v. Geo. Knapp & Co., 109 Mo. 131; Wolff v. Ward, 104 Mo. 127.  (a)  And they thereby also conceded to be true the conclusions of fact drawn from the matters recited in the petition.  Harman v. St. Louis, 137 Mo. 502; Nichols v. Nichols, 134 Mo. 187; H. & St. Joe Rail-

road v. Kenney, 41 Mo. 271. (b) And respondents can not now claim that the facts and conclusions of fact stated in the petition are improbable. Plant Seed Co. v. Michel Plant & Seed Co., 23 Mo. App. 586. (2) Adjoining owners have the right of access to their property over the adjacent streets; and this right is as inviolable as the right of the property itself. Therefore, a city has no power to grant to any one person the exclusive use of a highway; and the damage done the property owner in such a case is a continuous one which should be relieved by injunction. Sherlock v. K. C. Belt Railway Co., 142 Mo. 172; State ex rel. v. Murphy, 134 Mo. 548; Grand Ave. Ry. Co. v. People's R'y Co., 132 Mo. 34; Lumber Co. v. Railroad, 129 Mo. 455; Christian v. St. Louis, 127 Mo. 114; Knapp, Stout & Co. v. Railroad, 126 Mo. 26; Heinrich v. St. Louis, 125 Mo. 424; Lockwood v. Railroad, 122 Mo. 86; Schopp v. St. Louis, 117 Mo. 131; Gauss & Sons Mfg. Co. v. Railroad, 113 Mo. 308; St. L. Transfer Railroad, v. Railroad, 111 Mo. 666; Belcher Sugar Ref. Co. v. St. L. Grain Elevator Co., 82 Mo. 121; s. c. 101 Mo. 192; Glaessner v. Brewing Co., 100 Mo. 508; Glasgow v. St. Louis, 87 Mo. 678; s. c. 15 Mo. App. 112 and 107 Mo. 198; Cummings v. St. Louis, 90 Mo. 259; Bailey v. Culver, 84 Mo. 531; Springfield Ry. v. Springfield, 85 Mo. 674.

*B. Schnurmacher* and *Chas. Claflin Allen* for respondent, St. Louis.

(1) Paragraph 2, of section 26 of article III, of the charter of the city of St. Louis confers upon the mayor and municipal assembly the express power of establishing, opening, vacating, etc., all streets, avenues, sidewalks, alleys, etc. The power being express and absolute it is for the assembly and mayor to decide whether a street shall be kept open or vacated and not for the courts. Glasgow v. St. Louis, 107 Mo. 198; Heinrich v. St. Louis, 125 Mo. 424; Christian v. St. Louis,

127 Mo. 109; City v. Clark, 54 Mo. 36; Springfield Railroad v. Springfield, 85 Mo. 676. (2) Plaintiff's property, as appears from the face of the petition, does not abut or front upon that part of the street which the ordinance under consideration vacates. Plaintiff therefore is in no greater manner interested in the validity or invalidity of the ordinance which affects that part of the street, than any other citizen of the city of St. Louis. The injury to plaintiff, in order to enable him to maintain this action, must be special and peculiar to him, and different in kind, and not merely in degree, from the injury sustained by other members of the community. Glasgow v. St. Louis, 107 Mo. 202; Fairchild v. St. Louis, 97 Mo. 85; Rude v. St. Louis, 93 Mo. 408; Bailey v. Culver, 84 Mo. 531. (3) Plaintiff in this case is furnished a complete and adequate remedy at law, assuming it has any right of action at all. Therefore injunction will not lie. Christian v. St. Louis, 127 Mo. 109; Heinrich v. St. Louis, 125 Mo. 424. (4) The allegations of the petition are not sufficient to amount to charges of fraud upon the part of the city officers in the enactment of the ordinance. They are mere conclusions and not averments of fact. Fraud must be pleaded specifically and not generally; enough facts must be recited to enable the court to conclude for itself whether fraud did or did not exist. Bliss on Code Plead., sec. 211; Smith v. Sims, 77 Mo. 274; Hoester v. Sammelmann, 101 Mo. 624; Mateer v. Railroad, 105 Mo. 320; Clough v. Holden, 115 Mo. 353; Bank v. Rohrer, 138 Mo. 380.

*F. C. Sharp* and *George T. Weitzel* for respondent, St. Louis Stamping Company.

(1) The law presumes that the municipal assembly has made careful investigation before it acted. To say that the courts have the right of review would substitute their discretion for that of the legislature, and would practically deprive

the city of the legislative powers conferred upon it. The only exception to the above declaration seems to be that when it is manifest that the action of the legislative body is arbitrary and not influenced by honest judgment, and it results oppressively to the citizen, the courts, if timely application is made, will not hesitate to interfere and grant relief. Morse v. Westport, 136 Mo. 276. (2) Injunction will not lie unless appellant, in addition to showing that he is an abutting property owner on the vacated street, and that he has no adequate legal remedy, alleges and proves fraud on the part of the municipal assembly. 1 Dil. Mun. Corp. (4 Ed.), sec. 311; Glasgow v. St. Louis, 107 Mo. 198.

GANTT, P. J.—On the 9th of November, 1896, the plaintiff, a Wisconsin corporation, filed the following petition in the St. Louis circuit court.

"The above named plaintiff brings this suit on behalf of itself and all other persons, owners of property fronting on Main street, hereinafter mentioned, who may see fit to join, as paintiffs herein; and complaining of the defendants above named, said plaintiff says:

"That plaintiff, the Knapp, Stout & Co. Company. is a corporation existing under the laws of the State of Wisconsin, and for many years last past has owned, and now still does own and possess, among other parcels of real estate in said city of St. Louis, a lot 60 feet in width, lying on the north side of Salisbury street, at a point where Main street hereinafter named, runs into or intersects Salisbury street; so that said lot fronts also on Main street as hereinafter mentioned at its northern terminus.

"That defendant, the city of St. Louis, is a municipal corporation existing under the laws of Missouri, its last charter having been adopted October 22, 1876, and being a public act.

"That defendant, the St. Louis Stamping Company, is also a corporation, duly incorporated, and existing as such, and

that on the 17th day of February, 1891, one F. G. Niedringhaus was the president of said defendant, the St. Louis Stamping Company, and was authorized to act for, and on its behalf in the matters hereinafter alleged against said defendant, the St. Louis Stamping Company.

"That for many years prior to October 22, 1876, there existed, and now still exists in said city an open, public street or highway, of the width of about 60 feet extending from about Dorcas street in the southern suburbs of said city, northwardly to Salisbury street, a distance of more than 75 blocks, or about 5 miles.

"That said street is called Main street or First street, and in its course follows the meanderings of the Mississippi river; and that said street has during all said time been used by the public as an open and complete public street and highway; that the owners of the ground fronting said street constructed their buildings along the eastern and western lines of said street, treating the same as a public street, and that the defendant, the city of St. Louis, has during all said time, and until the happening of the grievance hereinafter complained of, used and treated said street as one continuous street, extending between the points and the distance aforesaid.

"The defendant, the city of St. Louis, at the times hereinbefore mentioned, held and now still holds the title to said street as a continuous street extending between the points aforesaid, in trust for the use of the public of said city of St. Louis, and especially in trust for the use of the owners of property abutting or adjoining the same, including the plaintiff hereinbefore mentioned by reason of the plaintiff's ownership of said tract of ground fronting on said Main street, hereinbefore more particulary described.

"That heretofore the Municipal Assembly of defendant, the city of St. Louis, passed an ordinance numbered 16094, which was approved by the mayor of said city April 4, 1891, and is in words and figures as follows:

" 'An ordinance vacating certain streets and alleys in the district between Angelrodt street and Destrehan street, and between Hall street and the center line of Broadway.

" 'Be it ordained by the Municipal Assembly of the city of St. Louis, as follows:

" 'Section 1.   First street between Angelrodt street and Destrehan street, is hereby vacated; also the alley through city blocks eleven hundred and ninety-nine and twelve hundred, and that portion of the alley in city block twelve hundred and one situated north of a line one hundred and forty feet distant northwardly from and parallel to the north line of Angelrodt street; also that portion of Broadway laid out in Angelrodt division situated north of a line one hundred and forty feet north of Angelrodt street and east of a line ten feet eastwardly from and parallel to the west face of the eastern curb set along Broadway west of block ten of said Angelrodt division.

" 'Section 2.   The mayor of the city of St. Louis is hereby authorized to convey the strips of land described in section one to the owners of the abutting property, provided that they will within thirty days after the passage of this ordinance dedicate to public use forever (first) an alley fifteen feet wide, extending from Broadway eastwardly one hundred and thirty-five feet to the alley, and the north line of which said new alley is to be one hundred and forty feet northwardly from and parallel to the north line of Angelrodt street, and (second) a strip of land extending from Destrehan street southwardly two hundred and eight feet, to Angelrodt's division, bounded westwardly by a line ten feet eastwardly from and parallel to the west face of the eastern curbstone on Broadway between Destrehan street and Angelrodt street, and east by block ten of Destrehan's division as represnted upon the plat of Bremen.

" 'Section 3.   The owners of the property in the northern and eastern part are furthermore required to give a bond in the penal sum of five hundred dollars within thirty days after

the passage of this ordinance to insure the grading and paving of the alley in block twelve hundred and one, to be dedicated to public use under the provisions of section two of this ordinance to the satisfaction of the board of public improvements. Approved April 4, 1891.'

"That by section 1 of said ordinance, defendant, the city of St. Louis, does attempt to break the continuity of said Main street by vacating, or attempting to vacate, one block thereof extending from Angelrodt street to Destrehan street, a width of 60 feet and a distance of more than 300 feet.

"That the ordinance aforesaid was not passed nor approved for any public purpose, but was passed and approved at the instance of defendant, the St. Louis Stamping Company, acting therein by its president, Frederick G. Niedringhaus, in pursuance of a letter written by said Niedringhaus addressed to the Municipal Assembly of said city, dated February 17, 1891, being in words and figures as follows:

'St. Louis, Mo., February 17, 1891.
'Hon. C. P. Walbridge, President City Council:

'Dear Sir:—To satisfy any doubt on the matter we wish to give your honorable body the assurance, in case our bill for the vacation of part of Main street is passed, our contemplated tin plate works will be built on the property.

Yours truly,
'F. G. Niedringhaus, President.'

"That defendant, the St. Louis Stamping Company, is a private corporation, existing solely for the private gain of the shareholders thereof and engaged in the business of manufacturing and selling granite-ware, tin-plate, and other like commodities.   That the sole and only purpose of said ordinance hereinbefore set out, passed and approved as aforesaid, was and is to give to said defendant, the St. Louis Stamping Company, the exclusive use and possession of said part of said Main street lying between Angelrodt and Destrehan streets, and to the end that said St. Louis Stamping Company may

increase its business capacity and the profits of its shareholders. That said part of Main street lying between Angelrodt and Destrehan streets, and so by said ordinance attempted to be ceded or given to said St. Louis Stamping Company, would be, if private property, of the value of upwards of $20,000. That by and under color of said ordinance, said St. Louis Stamping Company has, since the passage and approval of said ordinance, taken possession of said part of Main street lying between Anglerodt and Destrehan streets, and has excluded this plaintiff and the public therefrom and has erected permanent constructions thereon, constituting in law a nuisance upon said highway.

"That the said ordinance of the Municipal Assembly of defendant, the city of St. Louis, numbered 16094, hereinbefore set out, was passed by said assembly, and approved by the mayor of said city, without any legal warrant or authority whatsoever therefor. That the attempt to obstruct said part of said Main street, mentioned in said ordinance, and to devote the same to the private use of the defendant, the St. Louis Stamping Company, is a violation by said defendant, the city of St. Louis, of its duties as trustee, holding the title to said street as hereinbefore mentioned, and that the occupation and use of said part of said street by defendant, the said St. Louis Stamping Company, is wholly illegal.

"That plaintiff has no adequate remedy at law, either for the recovery of damages or otherwise, to prevent, or to be compensated, for the injury already done it, and which may hereafter accrue to it, because of the attempted destruction of the continuity of said Main street, and the appropriation by defendant, the St. Louis Stamping Company, of said part thereof, and that the damages of the plaintiff in the premises are irreparable.

"That plaintiff, together with certain other parties on May 2, 1891, instituted in this court against defendants, an action setting forth the foregoing facts, and praying the same

relief as is hereinafter prayed, and that said former suit was dismissed without prejudice to plaintiff or its rights, on December 8, 1891.

"Wherefore, The plaintiff now prays the court, as a court of equity, for a decree declaring as wholly null and void the said ordinance numbered 16094, approved April 4, 1891, entitled 'An ordinance vacating certain streets and alleys in the district between Hall street and the center line of Broadway,' in so far as the said ordinance affects Main or First street, between Angelrodt and Destrehan streets, enjoining and restraining defendants, their agents, servants, successors, assigns, and all who may come under them hereafter, from in any manner interfering with said part of Main street between Angelrodt and Destrehan streets, under or by color of said ordinance; and also that upon final hearing of this cause, the court will, by its decree, require and enjoin upon defendants, their successors, assigns, agents, servants, and all who may come under them in the premises, the duty of removing from said part of said Main street any and all obstructions which defendants may now have placed, or which they, or any one under them, may hereafter place upon said part of said Main street. So that, upon the final hearing of this cause, this court will, by its decree, secure to the plaintiff and the public of said city, and all persons interested, the restoration of said part of Main street, as the same existed at the date of the passage and approval of the ordinance aforesaid. And the plaintiff also prays against the defendants judgment for their costs, and for such other and further relief as to the court may seem meet," etc.

The petition was signed by plaintiff's attorneys, and writs of summons were issued, which were duly served upon the defendants. The defendants, after the return day of the writs, filed separate demurrers to this petition, the grounds assigned therein being that the petition did not state facts sufficient to constitute a cause of action. These demurrers coming on for

hearing were by the circuit court sustained on February 1, 1897, and appellant declined to plead further. The court on February 16, 1897, entered a final judgment for the defendants, dismissing the bill and awarding against the appellant judgment for costs.

Thereafter, on February 23, 1897, appellant perfected this appeal.

I.  The question for decision is, did the circuit court err in sustaining the demurrer?

By its charter, paragraph 2 of section 26, article III, the city of St. Louis is expressly authorized to establish, open, vacate, alter, widen, extend, pave, or otherwise improve and sprinkle all streets, avenues, sidewalks, alleys, wharves, etc. This power thus expressly conferred has been judicially confirmed by the decisions of this court on different occasions.

In Glasgow v. St. Louis, 107 Mo. loc. cit. 204, the precise point was before this court and Judge BLACK, speaking for the whole court said, "the charter of the city of St. Louis gives the mayor and assembly power by ordinance, 'to establish, open, vacate, alter, widen . . . . . . . all streets, sidewalks, alleys,' etc.   Under such a power the Municipal Assembly may vacate a street or part of a street without any judicial determination. And such a power, 'when exercised with due regard to individual rights, will not be restrained at the instance of a property-owner claiming that he is interested in keeping open streets dedicated to the public.' [2 Dillon on Mun. Corp. (4 Ed.), sec. 666.]"

The question next arose in the case of Heinrich v. St. Louis, 125 Mo. 424, which was an action to recover damages which plaintiff claimed he had sustained in the depreciation in the value of certain property owned by him, through the action of the city of St. Louis, in vacating a part of Olive street, upon which his property formerly fronted. The plaintiff recovered a judgment in the circuit court, from which the defendant appealed. The judgment was affirmed by this

court, it being held that while the city under its charter powers, has the undoubted power to vacate as well as to open streets, and while it is for the city to determine when it will exercise this charter power, nevertheless the city becomes liable for whatever damages may legitimately result from its exercise of the power. The court said: "The Municipal Assembly of the city of St. Louis has the power conferred upon it to vacate streets and alleys; and it is for the assembly, and not the courts, to say when that power shall be exercised. As the city has this power it is insisted, on its behalf, that the vacation of one street affords no ground of complaint where the property owner still has access to his property by another street or alley, and hence the defendants' demurrer to the evidence should have been sustained. Though the city has the right and power to vacate streets when and where its legislative body shall deem best for the public good, still it does not follow that the city is not liable for damages resulting to abutting property owners, arising from the exercise of that power. The power must be exercised subject to the Constitution which provides that private property shall not be taken or damaged for public use without just compensation. In the case of Glasgow v. St. Louis, 107 Mo. 202, we held injunction would not lie to restrain the enforcement of an ordinance vacating a part of a street, at the instance of persons whose property did not abut on the vacated portion of the street. But it was said in that case: 'There is no doubt but a property owner has an easement in the street upon which his property abuts, which is especial to him and should be protected.' "

In the case of Christian v. St. Louis, 127 Mo. 109, plaintiff sought to enjoin the city from closing up an alley in the rear of his property, pursuant to an ordinance authorizing the vacating thereof. Injunction was denied him in the lower court and he appealed to this court, where the judgment was affirmed. The court after conceding plaintiff's right as

an abutting property owner to proceed, says the following respecting his right of action: "On the other hand the right of the city to vacate the alley is expressly conferred by charter. This power to vacate must be exercised subject to the constitutional provision that private property shall not be taken or damaged for public use without just compensation. That plaintiff has a clear legal remedy is without doubt. [Heinrich v. St. Louis, 125 Mo. 424.] Is he entitled to an injunction against the city?" The court then considers the latter inquiry and concludes that the facts in the case, which showed that the alley in question had never been improved; that plaintiff's own property had never been improved; that the alley was below grade; that the owners of all the remaining property in the block desired the alley to be vacated; that the alley, if opened, would have no outlet upon any highway, did not warrant the granting of an injunction and that plaintiff would be remitted to his legal remedy for damages.

But conceding that the city has the express power to vacate a street still it is obviously the position of plaintiff that if the ordinance providing for the vacation of the street was the result of fraud it can be impeached and avoided by the courts. Such was the conclusion reached in Glasgow v. St. Louis, 107 Mo. 198. The court in that case said, "The rule of law is well established that the courts will not inquire into the motives of the legislature in enacting a law, even where fraud and corruption is alleged. [Cooley on Const. Lim. (5 Ed.), 225.] But the rule is somewhat relaxed as to municipal bodies. Speaking of such bodies, it is said: 'We suppose it to be a sound proposition that their acts, whether in the form of resolutions or ordinances may be impeached for fraud at the instance of persons injured thereby.' [1 Dill., Mun. Corp. (4 Ed.), sec. 311.]"

Construing, then, the averments of the petition to concede a power in the city to vacate the portion of main street described, but intended to charge fraud or such arbitrary con-

duct as would amount to fraud in the procurement and passage of the ordinance vacating said street, let us examine the aver- ments of the petition for that purpose.   Of course, whatever the true facts may be, for the purpose of this discussion, the truth of every fact well pleaded must be deemed admitted. On the other hand it is the facts, not the conclusion of the pleader, which are admitted.   [Clough v. Holden, 115 Mo. 336; Hoester v. Sammelmann, 101 Mo. 619; Nichols v. Stevens, 123 Mo. loc. cit. 117, 118.]   Moreover, to entitle plaintiff to relief as an adjoining proprietor it devolved upon it to allege and prove that it owned property fronting or abutting on the part of the street which the ordinance in question vacated.   In a word, it must aver facts which show it will suffer a special or peculiar injury and not merely such inconvenience as is cast upon all other persons of that neigh- borhood.   [Glasgow v. St. Louis, 107 Mo. loc. cit. 205; Van De Vere v. Kansas City, 107 Mo. 83; Rude v. St. Louis, 93 Mo. 408; Fairchild v. St. Louis, 97 Mo. 85.]

The allegation of the petition is that plaintiff is the owner "of a lot 60 feet in width lying on the north side of Salisbury street at a point where Main street runs into or intersects Salisbury street so that said lot fronts also on Main street as hereinafter mentioned, at its northern terminus." The petition further alleges that the portion of Main street vacated by the said ordinance lies between Destrehan and Angelrodt streets. It does not aver that its said property or lot abuts on the vacated portion of said street, but bases its right upon the sole averment that its property abuts on Main street, and this ordi- nance breaks the continuity of said street.

It devolved upon plaintiff to show by direct averment that he "had a greater trust or incommodity" than the other property owners whose property also abutted on Main street. This it has failed to do.   It is stated by counsel for one of the defendants that it shows on the contrary that its property abutted on another portion of the street distant two city blocks

north of the portion vacated by the ordinance, and by the counsel for the city, that it does appear from the names of the streets, "that at least one block intervenes. In point of fact the distance is greater than that." These statements of counsel however probably grow out of their personal knowledge of the relation of the several streets and can not be said to appear from the averments of the petition to which alone we can look on this demurrer.

As already said, it is sufficient that plaintiff does not aver that its property abuts on the vacated portion, nor state facts from which such an inference must necessarily be drawn. Plaintiff having failed to aver such a special and peculiar injury by reason of the vacation of the street, it is clear that the injury to it differed only in degree and not in kind from that sustained by other abutting owners on Main street. The petition then must be held fatally defective as a basis for injunctive relief. [Bailey v. Culver, 84 Mo. 531; Glasgow v. St. Louis, 107 Mo. 198.]

This brings us to the consideration of that long list of decisions cited by plaintiffs, in which this court has ruled that adjoining owners have property rights in the abutting streets and the right of access to their property over the adjacent streets, and that a municipal corporation can not confer upon a corporation or individual the use of its streets exclusively for the business of such corporation or individual. [Sherlock v. K. C. Belt R'y Co., 142 Mo. 172; Schulenburg & Boeckeler L. Co. v. Railroad, 129 Mo. 455; Grand Ave. R'y Co. v. People's R'y Co., 132 Mo. 34; Knapp, Stout & Co. v. St. Louis Transfer R'y Co., 126 Mo. 26; Lockwood v. Wabash R'y Co., 122 Mo. 86; Schopp v. St. Louis, 117 Mo. 131.] And that other class of cases in which it is held that while the city may vacate a street it must do so subject to the constitutional right of the abutting owner to hold it for damages he may suffer by its vacation. [Heinrich v. St. Louis, 125 Mo. 424; Christian v. St. Louis, 127 Mo. 109.] These cases in no

sense conflict with the express power of the city to vacate a street.

On the contrary, they are predicated on the principle that so long as a street is a street it is held by the city in trust for the public and can not be lawfully appropriated to a mere private use and so long as it is a street an abutting property holder may invoke injunctive relief to prevent its being devoted to private purposes whereas the power to vacate rests upon the grant of the State to the city to determine when the purposes for which the streets have been created have been subserved and to dispense with the further maintenance thereof, subject always to the right of the adjacent proprietor to sue for and recover any damages which may result from such vacation. [Christian v. St. Louis, 127 Mo. 109.] And subject also to the right of an abutting property owner to prevent the vacation of such street if he can show that the ordinance for that purpose has been passed by fraud or corruption. Looking to the averments of this petition it will be seen there is no averment of fraud in the procurement of the ordinance. The ground for injunction lies in the allegation that the ordinance was not passed for a public purpose; that its sole purpose was to give the St. Louis Stamping Company a valuable piece of real estate, to wit, the vacated street. Nothing could be more apposite to this contention it seems to us than the decision of this court in the Glasgow case, *supra*. In that case as in this, it appeared that the vacation of the street would result in enabling a large manufacturing industry to extend and connect its factories but that was not deemed evidence of fraud. Said this court: "There is no doubt but the Municipal Assembly, in enacting the ordinance, intended to aid and foster a large manufacturing industry; but it is equally clear that the ordinance was passed with due regard to the public interests. The evidence entirely fails to show any fraud on the part of the city authorities, or any combination to injure any one. Nor does the evidence show that the

ordinance was an unreasonable one. Whether the street should be kept open or vacated was purely a matter of expediency, and that was a question for the Municipal Assembly and not for the courts to decide.   [State v. Clarke, 54 Mo.36; Springfield R'y Co. v. City of Springfield, 85 Mo. 676; Kittle v. Freemont, 1 Neb. 329.]"

In addition to what was said in that case it may be added that in this case plaintiff does not claim that by reason of the vacation of the portion of Main street its property is rendered inaccessible.   On the contrary they allege their egress and ingress from Salisbury street, thence to all the streets of the city.

Moreover, the plaintiff informs us that Salisbury is the northern terminus of Main street and in no event could they travel further north on Main street, even if this block were not vacated, and like the facts in the Christian case, if Main street had been left open it would have formed a mere *cul de sac* of no benefit to plaintiff or any other abutting proprietor. Our conclusion is that the city had express power to vacate the portion of the street in question; that there is no sufficient allegation of fraud to rebut the presumption that the mayor and assembly were actuated by due regard for the public welfare of the city in passing the ordinance to vacate and that plaintiff not being an abutting property owner on the vacated portion has no right to injunctive relief.

The judgment of the circuit court sustaining the demurrer and dismissing the bill is sustained.   *Sherwood* and *Burgess*, *JJ.*, concur.