State ex rel v. Bandel.

THE STATE OF MISSOURI ex rel. CHARLES PAU-
LETTE, Respondent, v. GOTTLIEB BANDEL,
Appellant. --

Kansas City Court of Appeals, November 5, 1906.

1. **SECOND-CLASS CITIES: Mayor's Appointment: Council's Ob-
jection: Statutory Construction.** Under section 5508, Revised
Statutes 1899, the objections of the council to the mayor's nom-
ination to an office is not required to be entered in the council
journal when the same is in session but a majority of the
members of the council acting out of session can make the
requisite legal objections to such appointment.

2. ———: ———: ———: **Character of Objections: Statutory Con-
struction.** The statute does not limit the objections nor name
their kind or character and whether the objections are good
or poor is alone for the members and becomes valid when
evidenced by adoption in the manner required.

3. ———: ———: ———: ———: ———. The fact that the
writing signed by a majority of the council may add to the ob-
jections the following, "It is therefore believed that the ap-
proval of such appointment should be withheld, pending prop-
er investigation," cannot have the effect to nullify the preced-
ing objection since the statute does not require the approval
nor contemplate its withholding.

4. ———: ———: ———: **Good Faith.** It is immaterial whether
such objections are made in good faith or are the result of
fraudulent combination of the councilmen since the right to
object is left exclusively with the councilmen, uninfluenced
or uncontrolled by any tribunal and the appointee has no vest-
ed right in the office.

Appeal from Buchanan Circuit Court.—*Hon. Chesley
A. Mosman,* Judge.

AFFIRMED.

*Mytton, Parkinson & Crow* for appellant.

(1) Respondent alleged that he was a resident tax-
payer of the city of St. Joseph, Mo., which entitled him
to prosecute this suit but there is no proof whatever on

this subject which necessarily reverses the case. Davis v. Hartwig, 94 S. W. 513; State v. Berkley, 140 Mo. 186; State ex rel. v. Boal, 46 Mo. 529; 23 Ency. of Law, 616 and cases cited. (2) Appellant alleged and offered to prove that the acts of the members of the common council relied on by respondent to annul the appointment of appellant were fraudulent and void and that the statements made in the alleged objections to appellant were false and that there was a fraudulent conspiracy entered into by said persons to fraudulently deprive appellant of the office and the court sustained objections to the testimony. The action of the court was opposed to all precedent and for that reason reversible error. Knapp & Co. v. St. Louis, 153 Mo. 560; 20 Ency. of Law, 1229 and cases cited. (3) The pretended objections do not comply with the act in that they do not specify any objection that the common council has to the appointment of Gottlieb Bandel, but say that reputable citizens have protested against his appointment but for what reason they do not say. (4) The act of 1903, found in Session Acts 1903, at page 163 et seq., defined the duties of the common council and among those duties by section 16, they are required to object in a certain specified manner to any appointment that may be made by the mayor; that is, the common council shall make the objections and same shall be entered on the journal of the common council and in this case there was no meeting of the common council between the 16th day of April, 1906, and the 24th day of April, 1906, the second meeting being long after the expiration of the five days. The individuals composing the common council could not act and could only act while convened in a body in accordance with law and the attempt of the individuals to act or perform a duty required to be performed by the common council as here, is wholly void and without effect. Acts 1903, 163; Dillon on Municipal, Corporations secs. 259, 270; State v. Lawrence, 178 Mo. 373; State ex

rel. v. Woodson, 161 Mo. 444; Johnson v. School District, 67 Mo. 319; Forry v. Ridge, 56 Mo. App. 620; 20 Enc. of Law 1210 subd. 3, 4, notes and cases cited; 7 Ency. of Law, 873, notes; 2 Ency. of Law, p. 1003 and cases cited; State ex rel. v. Weeks, 38 Mo. App. 573.

*C. F. Strop* and *Eugene Silverman* for respondent.

(1) This proceeding having been instituted upon the information of a resident, citizen and taxpayer, was properly commenced. State ex rel. v. Jenkins, 25 Mo. App. 490; State ex rel. v. Vail, 53 Mo. 110. (2) The appellant was not entitled to a jury trial. State ex rel. v. Lupton, 64 Mo. 416. (3) A majority of the common council having filed written objections to the appointment of appellant, · such appointment became void. Session Acts 1903, p. 73, sec. 16. (4) The officer of superintendent of the city workhouse having been created by ordinance, and the same ordinance having prescribed, the method of appointment and confirmation, the appellant had no right to the office until he showed that he had been confirmed by the common council. See ordinance creating the office of superintendent, R. S. 1899, secs. 5508, 5538.

ELLISON, J.—This proceeding is by writ of *quo warranto* whereby it is sought to oust the respondent Bandel from the office of superintendent of the workhouse of the city of St. Joseph, a city of the second class. On a hearing by the circuit court judgment of ouster was rendered and thereupon the respondent appealed to this court.

It appears that superintendent of the workhouse is not an office specified in the charter of St. Joseph, but the charter by a general clause of authority duly empowered the city council to create such an office by ordinance (section 5508, subdivision 39, Revised Statutes 1899). An ordinance was passed creating such an office

and the mayor of the city being duly authorized by the charter to do so, appointed respondent to such office. The provision of the charter giving the mayor such authority reads as follows:

"The mayor shall have the right to nominate all appointive officers and shall make such nominations within ten days after such right of appointment accrues, and unless a majority of the common council shall, within five (5) days after such nomination shall be made, file with the clerk thereof, in writing, and which the clerk shall enter on the journal their objections to such appointee with specifications thereof, then such appointment shall be final and valid. If such objections are so made, then the mayor shall, within five days after notice of such objections, nominate another person. If the mayor shall fail to make such nominations within the time herein prescribed, then his power of appointment as to that office shall cease and the common council may appoint." [Laws 1903, 16, p. 73.]

By this charter provision it is seen that a majority of the council may by objections thereto, prevent the appointment of the mayor from becoming effective. Objections to the appointment were made by a majority of the members of the council, and one of the principal questions for our decision is whether they were such objections as the charter contemplates; and whether they were made in the manner contemplated. It appears that within five days after the mayor made the appointment a majority of the members of the council (not while the council was in session) made the following written objection to the appointment and caused it to be spread on the records of the council:

"St. Joseph, Missouri, April 21, 1906.

"We, the undersigned members of the common council of the city of St. Joseph, Missouri, hereby object to Gottlieb Bandel, appointed by the mayor, as superintendent of the city workhouse, for the reason

that protests have been made against the appointment of said Bandel by reputable citizens to members of the common council. It is, therefore, believed that approval of such appointment should be withheld pending a proper investigation." (Signatures.)

Three or four days after the foregoing objection was signed and filed a majority of the members of the council (not in session) addressed the following communication to the mayor:

"St. Joseph, Missouri, April 24, 1906.
"Hon. William E. Spratt,
"Mayor of the City of St. Joseph, Missouri.

"In a previous communication heretofore filed with the city clerk, objections were made by a majority of the common council to the appointment of Gottlieb Bandel as superintendent of the city workhouse because protests by citizens that said Gottlieb Bandel was not a suitable person to hold such office. Upon investigation we find that there is a substantial foundation for such protests and we therefore permit our objections to stand." (Signatures.)

The respondent believing that no legal objections had been presented by the majority of the council, considered his title to the office complete by the mayor's appointment and entered upon a discharge of its duties. This *quo warranto* proceeding was then begun as above stated. The position of the respondent is that when the charter uses the phrase "majority of the common council," it means the common council acting in a body, that is to say, in session. The relator's position is that the intention was merely that a majority of the members of the council should act and that action by the official body, as such, was not intended and, considering the time and manner of action as required, was altogether impractical. We are satisfied this latter view embodies the correct interpretation of the charter. There is no doubt but that generally when a common council, or a

Legislature, or a Congress, is referred to especially in statutes, a single official body is meant. And that when acts are required to be performed they must be performed by the body and not by separate volition of the different members composing such body. The authorities cited by respondent do no more than to give effect to this well-known rule. But it is apparent from the law itself that no such meaning was intended by the expression as here used. In the first place if the majority of the council as a body in session, was intended, the use of the word, "majority," was superfluous. The proper expression would have been merely, "the common council," and majority action in session, would have been the action of the council.

Again the law requires that the objections shall be specified, that is, shall be stated. Now if it is only the council as an official body which can act, it must follow, that such body must agree on the objection or objections to the appointment before it could state them. To agree, as a body, on any objection it would be necessary that a majority of the body agree upon an objection before it could be adopted as the objection entertained by the body. It might well happen that while each one of a majority, or even all, of the members of the body had a serious objection to the appointment, neither could agree to the other's objection and therefore no objection of the body, as such, could be stated.

Again, the law provides that the objections shall be stated within five days after the nomination is made by the mayor. If they can only be made by the council, there should have been some provision (which we do not find) that appointments could only be made by sending notice thereof to the council in session. But suppose the council to be in session when an appointment was announced; as five days are given for objections, it would be compelled to remain in continuous session, or adjourn from day to day, in order to keep in legal posi-

tion to make objections. It is true the council might adjourn to a certain day, but that could only be done under the charter by a two-thirds majority of all the members elect (Laws 1903, section 2, p. 70) and thus a small minority could thwart a free exercise of the duty which is imposed upon the majority.

These observations, borrowed mainly from the argument of counsel for relator, seem to us should conclusively settle that the charter meant that a majority of the members of the council, acting out of session, could make the requisite legal objection to the mayor's appointment.

We are also of the opinion that the objections as stated are such as fall within the terms of the charter above quoted. The charter requires the objections to be specified in writing. It does not pretend to limit the objections or to name what the objections shall be in kind or character. The duty prescribed is to name the objection in writing. The responsibility for the soundness of the objection rests with the councilmen. The writing above set out states the objection to be that reputable citizens had protested against the appointment. Whether that was a good or a poor reason for the action of the members it certainly became a valid one when evidenced by the adoption of the members in the manner required by the charter.

It will be noticed that the closing sentence of the foregoing written objections states that the councilmen had concluded to withhold approval of the appointment pending a proper investigation of the appointee. Respondent contends that such sentence qualifies or nullifies the objection made, in that it shows such objection to be only temporary. We think it has no such effect. The objection was properly stated and the addition made thereto by the closing sentence in reference to withholding approval of the appointment was outside of and beyond the duty of the objecting members.

State ex rel v. Bandel.

They had no power of approval to withhold. Their authority only extended to objections, which they made and which, if they had not made, would have left the appointment valid. The law did not require their approval, nor contemplate any withholding of approval. Objections were duly made and the five days limit for making such objections passed by. This nullified the appointment. The subsequent notice to the mayor, above set out, was merely a volunteer communication, and had no legal effect one way or another.

But complaint is made that the circuit court erred in not permitting respondent to show that the objections were not made in good faith and that they were the result of a fraudulent combination between the members. The trial court properly ruled out such offer of evidence. If the action of the members of the council is to be submitted to revision by the courts, it would cause unseemly and interminable confusion. The right to object is left by the law exclusively with the councilmen, uninfluenced and uncontrolled by any tribunal. His motive and his conduct leading up to his conclusion to object is left to his conscience and without power to question being placed anywhere except by action of the people in legal form for the choice of officers. It was held in Knapp, Stout & Co. v. St. Louis, 153 Mo. 560, that a citizen owning property on a street, could show that an ordinance vacating the street was not passed for a public purpose but by fraud and corruption. But that is not applicable here. A citizen has a vested right in his property which he may defend to the end that he may not have it wrested from him by fraud. But this respondent has no vested right to the office he is charged with usurping. At the time the fraudulent conspiracy is charged to have been formed he had no right to the office. His title to the office, if it could ever be vested in the sense of a property right, was not made out. He had no right, in that sense, to have the office. The ques-

tion here pertains to political powers of government rather than to rights of property, and we know of no precedent justifying an examination into the motive of an official charged with the selection of officers either by way of appointment or confirmation. Criminal conduct in such official in the discharge of such duty would, of course, subject him to prosecution, but it could not affect the legality of the action he may have taken in the duty assigned to him by the law.

The objection that the relator was not a resident taxpayer of the city of St. Joseph, on account of not being made an issue by the answer, is not tenable.

We are satisfied that the judgment should be affirmed and it is so ordered. All concur.