Murray N. WINDLE and Ruth Windle, (Plaintiffs) Respondents,

v.

Jolene LAMBERT and James Lambert, (Defendants) Appellants.

No. 51172.

Supreme Court of Missouri, Division No. 1.

March 14, 1966.

Robert C. Frith, Chillicothe, for appellants.

Don Chapman, Chapman & Chapman, Chillicothe, for respondents.

HOLMAN, Presiding Judge.

This suit involves a strip of land located in Chillicothe, Missouri, 50 feet wide and 300 feet long. It is the vacated portion of McNally Street (sometimes referred to as McAnally Street) lying north of Irving Avenue. The first count of plaintiffs' petition was in ejectment and the second count sought a decree adjudging that plaintiffs owned the land in fee simple. Defendant, James S. Lambert, in his pleading sought a judgment to the effect that he owned a portion of said land and a 4½-foot strip off the west part of certain abutting lots. A trial before the court (after a change of venue to Linn County) resulted in a judgment for plaintiffs on both counts of their petition and against defendant on his claim for affirmative relief. The defendant appealed and has died while his appeal was pending. Upon motion we have ordered Jolene Lambert and James Lambert substituted as defendants and appellants. For convenience we will continue to refer to James S. Lambert as defendant.

Respondents have filed a motion to dismiss the appeal because appellant's brief is said to violate Civil Rule 83.05, V.A.M.R., in a number of respects. Although there is considerable merit in the motion we have decided, in the exercise of our discretion, to overrule it and to decide the appeal on its merits.

In February 1892 the plat of Mrs. Bryan's Second Addition to the City of Chillicothe, Missouri, was filed. Thereby, McNally Street, 50 feet wide, was dedicated to the public use. However, McNally, north of Irving Avenue, was never improved nor used as a street. It was fenced in and used by the owners of the Chillicothe Business College until they sold the college in 1956. In about the year 1935, members of the Moore family who owned the business college built a building 40 feet wide and 80 feet long in the south end of the portion of McNally here involved. It fronted on Irving Avenue. The portion of the street on which the building was constructed is bor-

dered on the east by Lots 6 and 7, Block 26, of Mrs. Bryan's Second Addition and on the west by a tract of ground which has not been platted.

In 1955 plaintiffs purchased all of the land abutting on each side of the block of McNally with which we are here concerned. There was testimony indicating that the Moore family sold the land, properties, and business of the Chillicothe Business College to Belin University and that shortly thereafter Belin became insolvent and was adjudged a bankrupt. While there is no conveyance in evidence, and no very specific testimony on the subject, it may be inferred that in June 1958 defendant bought the physical assets of Belin University from the trustee in bankruptcy, including whatever interest it may have had in the building heretofore mentioned. Defendant at that time went into possession of said building. However, on January 20, 1958, plaintiffs had filed a petition for an order to vacate the block of McNally north of Irving and that proceeding culminated in the passage, on April 28, 1958, of an ordinance vacating that part of McNally. Thereafter, by reason of the vacation proceedings, and their ownership of the abutting land, plaintiffs claimed to own the land hereinbefore described.

Plaintiff Murray Windle, in addition to some of the facts heretofore stated, testified that prior to the time defendant purchased the property of Belin University from the trustee in bankruptcy he told defendant that he was going to file proceedings to vacate the part of McNally where the building was located and thus obtain the building, and suggested that defendant not include the building in his bid for the Belin assets; that later he requested possession of the building from defendant, and defendant told him that he had "exhausted every means he could and that he just might as well turn it over"; that defendant removed his property from the building and delivered possession to the plaintiffs; that about three weeks thereafter he went to the building and discovered that there were padlocks on the doors and a sign on the building which read, "Keep out, private property, James Lambert." He stated that defendant continued to retain possession of the building, which resulted in plaintiffs filing this suit on September 28, 1959. This witness conceded upon cross-examination that one of his motives for instituting the proceedings to vacate the street was to get title to the building that had been erected thereon.

Ralph L. Moore testified that he and Allen Moore, III, had operated Chillicothe Business College prior to the sale to Belin University; that prior thereto the college had been operated by his father, Ralph Moore, and his uncle, Allen Moore, II; that when the building heretofore described was constructed they intended to build it in McNally Street; that they never claimed any title to that part of the street nor claimed any right to build the building in the street; that when they sold the college they conveyed whatever interest they had in that part of McNally Street by quitclaim deed; that he was familiar with Lots 6 and 7 of Block 26 of Mrs. Bryan's Second Addition which had formerly been owned by Charles DeLorme, and that they had never claimed that any part of the building was on said lots and had made no claim of title to any part of those lots.

Defendant did not testify. However, he presented the testimony of Maurice Dornay who stated that he was a land surveyor and, in February 1961, had made a survey of Lots 6 and 7 of Block 26 of Mrs. Bryan's Second Addition; that as a result of that survey he found that the east 4½ feet of the building here involved was constructed on the west 4½ feet of Lots 6 and 7 of said Block 26.

In rebuttal the plaintiffs offered the testimony of L. J. Shobe, a professional engineer and surveyor, who testified that he made a survey of the area in question; that his survey showed that all of the building in question was located entirely in the vacated portion of McNally Street and that no part of the building was located on Lots 6 and 7.

Plaintiffs also presented the testimony of R. A. Garvey, County Surveyor of Linn County, who testified that he had gone into the area here involved and had made a check of the survey of Mrs. Bryan's Second Addition, particularly in regard to McNally Street north of Irving Avenue; that according to his measurements no part of the building was located on Lots 6 and 7 but that the entire building was on the vacated portion of McNally Street.

There was extensive cross-examination of each of the three surveyors in an effort by attorneys to test the accuracy of their surveys, but we can see no purpose to be gained in attempting to set out said cross-examination in our statement of facts herein.

There is no controversy about the fact that since 1955 plaintiffs have owned the record title to all of the land abutting the vacated portion of McNally Street. There is also no contention that either plaintiffs or the city failed to comply with the requirements of the city ordinance in the vacation proceedings which resulted in the enactment, on April 28, 1958, of an ordinance vacating the portion of the street heretofore described. It may also be stated that defendant does not claim to have acquired any title by adverse possession to the land dedicated as McNally Street. His claim, as we understand it, is that the east 4½ feet of the building was located on the west 4½ feet of Lots 6 and 7, and that he and his predecessors had been in the actual, open, notorious, hostile, exclusive and continuous possession of the building for more than the statutory period and had acquired title to the west 4½ feet of Lots 6 and 7; that since that strip abutted McNally Street he acquired title to the east 25 feet (half) of that portion of the street upon which the building was located upon the vacation of that part of McNally; and that he therefore owned the land upon which the east 29½ feet of the building was located after the vacation proceedings had been completed.

■ The first point we will consider is defendant's contention, in effect, that the court erred in failing to adjudge that he was vested with the title to a portion of said land by adverse possession in accordance with the theory outlined in the preceding paragraph. We have concluded that there are two factual deficiencies which would preclude the entry of a judgment for defendant upon that theory. In the first place there was no evidence that the possession prior to 1956 was adverse and hostile, i. e., under an unequivocal claim of ownership. The evidence, in fact, was to the contrary. Mr. Moore testified that they intended to build the building in the street and never made any claim of title either to the street or to any part of Lots 6 and 7. It therefore is clear that there was no adverse possession for the statutory period prior to the date this suit was filed in 1958. Secondly, we find from the evidence that no part of the building was constructed on Lots 6 and 7 and therefore, for that reason, defendant could not have acquired title by adverse possession to any of the land upon which the building was constructed.

■ Defendant has also briefed the alternative contention that the "vacation proceedings were null and void as there was no public purpose to be served in the vacation of the street; that the sole intent, purpose and effect was to serve the private interest and result in the unjust enrichment of respondent merely to secure title to the building to which otherwise he had or would have no right, title or interest." Although we have held that defendant was not an abutting owner, we think he had a sufficient interest to permit an attack on the vacation proceedings because if such were invalid plaintiffs could not prevail in this action and defendant (as against the claim of plaintiffs) could retain possession of the building.

In support of this contention defendant has cited City of St. Joseph v. St. Joseph Terminal R. Co., 268 Mo. 47, 186 S.W. 1080, and Ray v. City of Chicago, 19 Ill.2d 593,

169 N.E.2d 73. The St. Joseph case involves a question of equitable estoppel and has no application to the question here presented. The Chicago case does hold that where the city vacated a heavily traveled street the court, under the applicable Illinois statute, could "examine the record to see if any public use or interest is subserved in vacating a street or alley, and if it appears as a fact that the purported vacation is for a purely private purpose the ordinance will be declared void. People ex rel. Foote v. Kelly, 385 Ill. 543, 53 N.E.2d 429. On the other hand, if there is any substantial showing that the public interest will be served by vacating the street or alley, the ordinance is within the power of the city council, no matter how much private parties may be benefited thereby." 169 N.E.2d 76.

In this state "The general rule is that courts will not inquire into the motives of Legislatures where they possess the power to act and it has been exercised as prescribed by law. This rule is especially applicable to purely legislative acts of municipal corporations." Kansas City v. Brown, 286 Mo. 1, 227 S.W. 89, 95. Some of our cases, however, have indicated that an ordinance to vacate a street may be invalidated for fraud. Glasgow v. City of St. Louis, 107 Mo. 198, 17 S.W. 743; Knapp, Stout & Co. v. City of St. Louis, 153 Mo. 560, 55 S.W. 104. However, in the Knapp case plaintiff relied on an allegation (as does defendant here) that the ordinance to vacate was not passed for a public purpose but for the purpose of giving an abutting property owner the vacated street. That allegation was held not to be a "sufficient allegation of fraud to rebut the presumption that the mayor and assembly were actuated by due regard for the public welfare of the city in passing the ordinance to vacate * * *." 153 Mo. 575, 55 S.W. 108. It should also be noted that there is no evidence in this case concerning the essential element relating to the intent of the city council in passing the ordinance. It follows that the pleading and proof are insufficient to support a finding or judgment that the ordinance in question was invalid.

It should also be mentioned that this is an effort to collaterally attack the ordinance. Since the contention here does not involve an absence of jurisdiction, or a failure to comply with an essential step in the vacation proceedings, we think the ordinance is not subject to collateral attack but that any review thereof must be in a direct proceeding in which the city is a party. See Haysler v. Butterfield, 240 Mo.App. 733, 218 S.W.2d 129, and 64 C.J.S. Municipal Corporations § 1672b, p. 50.

It follows from what we have heretofore said that defendant's alternative contention cannot be sustained.

The judgment is affirmed.

All concur.