JOHN R. SKELTON

*v.*

WILLIAM M. DUSTIN.

1. EVIDENCE—*of former acts of party with others.* In a suit by a bank as indorsee of a draft against the indorser who was the payee, where the proof admitted showed an arrangement between the plaintiff and the person upon whom the bill was drawn to cash drafts drawn upon the latter by the drawer of the one in suit, it was held no error in refusing proof that the plaintiff had cashed other drafts drawn by the same drawer, for the reason such arrangement had already been shown, and also because there was no evidence bringing home to the indorser any knowledge of such prior acts of the plaintiff.

2. PAROL EVIDENCE—*to vary contract of indorsement.* Parol evidence is not admissible to impair or change the legal effect of an indorsement in blank of commercial paper by the payee. The contract created by the indorsement of such paper in blank does not rest in parol, and can not be varied by proof of a parol agreement.*

3. DAYS OF GRACE—*the law of the place of payment governs.* The law of the place of payment must govern as to whether days of grace are allowed on commercial paper.

4. BILL OF EXCHANGE—*statute relating to notice on protest.* The statute of this State defining the duties of notaries public in respect to giving notice of the protest of bills of exchange applies only to notaries residing in this State, and not to those of other States.

5. SAME—*time in day for presentment.* Except where the paper is due from a bank, the proper hours for presenting a note or bill for payment range through the whole day down to bed-time in the evening.

6. The notarial certificate of the presentment of a bill for payment, and of protest, is presumptive evidence of presentment during the proper hours

---

*See, also, *Worden* v. *Salter*, 90 Ill. 160; *Schnell* v. *North Side Planing Co.* 89 id. 581.

But the indorser, when sued upon his indorsement, may show that he received the note as agent for the indorser, and in that capacity indorsed it to his principal. *Scammon* v. *Adams*, 11 Ill. 578. See, also, *Jones* v. *Albee*, 70 Ill. 37. So the indorser, when sought to be charged, may show, by parol testimony, what the consideration of the indorsement was, or that there was fraud. *Kirkham* v. *Boston*, 67 Ill. 599.

Where the indorsement in blank is by a third party, the real agreement between the parties may be shown by parol. *Eberhart* v. *Page*, 89 Ill. 550, and cases cited.

In *Jones* v. *Albee*, where a guaranty upon a note was in writing, a plea setting up a parol contract changing the liability of the indorser was held bad. 70 Ill. 36.

of business, and a statement therein that the " time limited for payment had expired" does not import that the presentment was after the close of business hours. It only means that payment had become due.

7. SAME—*damages on protest recoverable in suit on bill.* The five per cent damages given by statute upon a bill of exchange "in case suit has to be brought," are properly recoverable in the suit upon the bill.

APPEAL from the Circuit Court of Logan county; the Hon. LYMAN LACEY, Judge, presiding.

This was an action by Dustin against Skelton as indorser of a bill of exchange, as follows:

$455.14        *"Skelton, Ill., September* 7, 1875.

At sight pay to the order of John R. Skelton four hundred and fifty-five dollars and fourteen cents, value received, and charge the same to account of,

To W. C. BARRETT & Co.,       H. W. BARKER.
      Indianapolis, Ind."

Across the face is written: "Good. Sept. 10, 1875. W. C. Barrett & Co."

A verdict and judgment were rendered in favor of the plaintiff for $490.44, and the defendant appealed.

It was in proof that Barker, the drawer of the bill, was the agent of W. C. Barrett & Co., and was, at the date of the bill, buying grain for them at Skelton, Ill., and gave the bill to Skelton in payment for corn purchased of him. Dustin was a banker. He discounted the bill for Skelton on the 7th day of September, 1875, the latter indorsing it in blank. It was presented for payment on the 13th day of September, 1875, and payment refused, and on the same day it was duly protested for non-payment by a notary public of Indianapolis, Indiana. At the trial Barker testified that in August, 1875, he went to Dustin's bank and handed him the two following letters:

       *" Champaign, Ill., August* 30, 1875.
WM. M. DUSTIN, Lincoln, Ill.

     *Gent:* If W. C. Barrett & Co. wishes to draw on either

us or their bank in Indianapolis it will be all right, as they are good for all their contracts.

Yours, respectfully,

BURNHAM, CONDIT & CO."

" Indianapolis, Ind., August 31, 1875.

WM. M. DUSTIN, Lincoln, Ill.

*Dear Sir:* Mr. Wm. H. Barker, our agent, will call on you and will want to do some business through your bank in this way. Any drafts he may draw on us at sight, or any drafts that he may recognize that are drawn by other parties, you will greatly oblige by cashing same, and we will protect here. Trusting you will favor us by so doing, we remain yours truly,                W. C. BARRETT & CO."

After reading which, Dustin said he would accommodate them. The witness was then asked by plaintiff's counsel if afterward Dustin cashed any drafts for witness that were drawn by him on W. C. Barrett & Co., which question, on objection, was excluded by the court. The defendant, after testifying in his own behalf that he brought the draft to Dustin, handed it to him, and the latter handed it back and told defendant to write his name on the back, was then asked by defendant's counsel what else was done and said; to state all the conversation that took place at that time; whether Dustin stated that he had made arrangements with Barrett & Co. by which he was to pay such checks as these? All which questions, on objection, were excluded by the court, and exception taken.

Messrs. BEASON & BLINN, for the appellant.

Messrs. HOBLETT & FOLEY, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The exclusion of testimony is made the ground of one assignment of error. It is not entirely clear that the offered

testimony of Barker as to Dustin cashing drafts for the witness drawn by him on W. C. Barrett & Co., might not have been properly received as showing, with other evidence, the circumstances under which the money was paid by Dustin to Skelton for the bill; but as there is no evidence bringing home to Skelton any knowledge of the cashing of such drafts, or arrangement for cashing them, we incline to think that for this reason the testimony might properly be rejected. Besides, the testimony already in showed sufficiently a promise to cash such drafts, which would establish such alleged arrangement under which it is claimed the money was paid by Dustin, and to show instances of the performance of the promise would be but cumulative testimony to an undisputed point, viz: the arrangement alleged. We think there was no material error in excluding this evidence.

As to the offered evidence of the defendant himself of the conversation which took place between him and Dustin at the time of the making of the indorsement, the effect of it, so far as could be of benefit to the defendant, would be to impair the legal effect of his indorsement in blank by proof of a different parol agreement. This is not admissible, as has been repeatedly ruled by this court. *Mason* v. *Burton*, 54 Ill. 349; *Jones* v. *Albee*, 70 id. 34; *Beattie* v. *Brown*, 64 id. 360. In the latter case, after expressing disapproval of the cases cited on the argument, which were to the effect that a blank indorsement is not really a written contract, but one resting in parol, and open to explanation by parol, it was said:

"It can not be a parol contract where the payee indorses a note in blank, for there is, in legal contemplation, written over his name, the extent and character of his undertaking, which can not be varied by parol," and see *Prescott Bank* v. *Caverly*, 7 Gray, 217; *Howe* v. *Merrill*, 5 Cush. 80; *Dale* v. *Gear*, 38 Conn. 15; *Woodward et al.* v. *Foster*, 18 Gratt. 200; *Charles* v. *Denis*, 42 Wis. 56; *Rodney* v. *Wilson*, 67 Mo. 123; *Coon* v. *Pruden et al.* 24 Minn.

The attempt in the present case was to vary by parol—by the conversation of the parties at the time—the legal effect of the indorsement in blank made by the payee. The surrounding circumstances, except as first noted, under which the indorsement was made were given in evidence, which is all we think the defendant was entitled to, and that the further offered evidence of the conversation at the time of the indorsement was properly excluded.

It is urged that a sight draft matures when presented for payment, and if not then paid, must be protested for non-payment on the same day, and due notice given, in order to charge the drawer and indorser,—*Strong* v. *King*, 35 Ill. 9; that here the draft was presented on the 10th, and not protested until the 13th of September; and hence it is claimed the indorser was discharged. This is answered by the proof, which was made at the trial, of the statute of Indiana allowing three days of grace on all bills of exchange payable within the State, whether sight or time bills. The law of the place of payment must govern as to whether days of grace are allowed on commercial paper. *Bowen* v. *Newell*, 3 Kern. 290; *Mason* v. *Dousay*, 35 Ill. 424; Edwards on Bills and Prom. Notes, 554.

But if this be so held, it is then insisted that notice must be given according to the law of the place where the contract of the drawer or indorser was made, such being an implied condition,—*Aymer* v. *Sheldon*, 12 Wend. 439; Edwards on Bills and Notes, 587 marg.,—and it is claimed that notice in this case should have been given in pursuance of the provisions of our statute, Rev. Stat. 1874, p. 722, sections 11 and 12, which was not done. These provisions are, that it shall be the duty of each and every notary public in this State protesting a bill of exchange for non-payment, to give notice thereof in writing to the maker, and to each and every indorser of such bill, on the same day, or within forty-eight hours of such protest. If the maker or indorser reside more than one

mile from the place of protest, then such notice to be forwarded by mail or other safe conveyance.

The provisions referred to have no application to the present case. They relate only to notaries public residing in this State, and are but declaratory of the duties of notaries public of this State upon the subject. There is no claim that the notice here given was not in accordance with the rule of the law merchant; but it is only objected that the notice provided in the above named sections of our statute was not given. The objection is not well taken.

It is said that a bill of exchange should be presented for payment on the day it is payable, during the business hours of that day, *Strong* v. *King, supra;* and it is claimed, therefore, that it must be affirmatively shown, which it is said was not done in this case, that the bill was so presented during business hours. The only evidence there is as to the time of day the bill was presented for payment is found in the notarial certificate of protest, which states that the notary, "after the close of bank hours, presented the same (the bill) at the office of W. C. Barrett & Co., Indianapolis, Indiana, and demanded payment thereof, the time limited for payment having expired." The certificate is presumptive evidence of presentment during the proper hours of business. These, except where the paper is due from a bank, for the purpose of presenting a note or bill for payment, range through the whole day down to bed-time in the evening. *The Cayuga County Bank* v. *Hunt*, 2 Hill, 635; *Farnsworth* v. *Allen*, 4 Gray, 453; Edwards on Bills and Notes, 526 marg. There is no evidence that W. C. Barrett & Co. were bankers. The statement that the "time limited for payment had expired" does not import, as is contended, that the presentment for payment was after the close of business hours. It means no more, we think, than that payment of the bill had become due.

The instructions in this regard, asked by the defendant, were properly refused, there being no evidence upon which to base them.

Syllabus.

It is lastly objected that the court instructed the jury that a part of the measure of damages was five per cent of the face amount of the bill, and that the jury assessed such damages. The language of the statute in this respect being, "and in case suit has to be brought on such bill of exchange, (shall pay) five per cent damages in addition," it is insisted that the right to such damages does not accrue until after suit brought, and that such amount can not be included in the assessment of damages by the jury. This construction would necessitate a separate suit for the five per cent damages. We can not adopt that construction, but must hold such damages to be properly recoverable in this suit upon the bill.

Finding no error in the record, the judgment will be affirmed.

*Judgment affirmed.*