## Second National Bank of Beloit, Wisconsin, v. George L. Woodruff.

### Gen. No. 4,217.

1. INDORSEMENT—*when parol evidence is incompetent to vary contract of*. Ordinarily, it is incompetent to show by parol an agreement between indorsers and an indorsee, who in turn has indorsed the note to another, to the effect that such indorsers were not to be held liable as such.

2. EVIDENCE—*when incompetent under the pleadings*. Evidence is incompetent which merely tends to establish an issue which is not relied upon in the pleadings.

Action of assumpsit. Appeal from the Circuit Court of Winnebago County; the Hon. CHARLES E. FULLER, Judge, presiding. Heard in this court at the April term, 1903. Reversed and remanded. Opinion filed March 14, 1904.

WORKS & HYER, RITSHER, MONTGOMERY & HART, for appellant.

ELMER H. ADAMS and R. K. WELSH, for appellee.

MR. JUSTICE FARMER delivered the opinion of the court. This was an action of assumpsit by the Second National

Bank of Beloit, Wisconsin, plaintiff, against the Graham Distilling Company, as maker, and George E. King and George L. Woodruff as indorsers of two promissory notes for $2,000 each, dated January 2, 1896, payable one and two years after date respectively, with interest at six per cent per annum. The notes were executed by the Graham Distilling Company by George E. King, president, payable to the order of George E. King and George L. Woodruff, and by them indorsed in blank.

Plaintiff filed an appropriate declaration against both makers and indorsers. Judgment was taken by default against the Graham Distilling Company. No service was had on King. Woodruff pleaded the general issue, denial of joint liability with the Graham Distilling Company and George E. King; also, a special plea alleging that the indorsement of the notes sued on, was obtained by plaintiff from defendant merely for the purpose of transferring title to said notes pursuant to a contract to that effect, and to the further effect that plaintiff relied solely upon the responsibility of the maker, and not upon the responsibility of the defendant by reason of such indorsement; that in making the indorsement defendant acted only as agent of plaintiff in obtaining transfer of title to said notes to plaintiff, and that in pursuance of said contract, said indorsement was made by defendant, and the notes accepted by plaintiff, it relying solely upon the responsibility of the maker and not upon that of the defendant as indorser; that there was no consideration passing from plaintiff to defendant, and that it would be a fraud upon defendant to hold him liable as indorser. Issue was joined on all the pleas, and a trial had by jury, resulting in a verdict and judgment for defendant, from which judgment plaintiff prosecutes this appeal.

It appears from the evidence that at the time of giving the notes sued on, and for some time prior thereto, appellant held the notes of the Graham Cotton Mills for $4,000 which were past due, or about to become due. The Graham Cotton Mills was one of a number of concerns, called

"the Graham interests." There were besides the cotton mills, the Graham Paper Mills, Graham Match Factory and Graham Distilling Company. They were all heavily in debt, their largest creditor being the Second National Bank of Rockford, said bank "being practically the owner of the cotton mill and distillery, on account of its holding most of the stock or bonds of said companies." King was director and vice-president of the Second National Bank of Rockford, and Woodruff was its cashier.

The fact of plaintiff's holding the notes of the Graham Cotton Mills and that they were due or about to mature, was known to King and Woodruff. Just before the making of the notes sued, King went to Beloit, Wisconsin, to try to make some arrangement with plaintiff about the cotton mills' notes. King and Woodruff both testify that Woodruff was with King on that occasion, and was present at the conversation that took place about the matter with Parker, who was then cashier of plaintiff. Parker testified that King was alone, and that Woodruff was not present. Whoever may be correct as to that matter, there is no dispute that either King alone or in company with Woodruff called upon Parker, plaintiff's cashier in Beloit, and had a talk with him concerning the notes of the Graham Cotton Mills held by plaintiff. For reasons that will hereafter appear, we will not undertake to discuss what the evidence shows was said in that interview between the parties, further than that it was arranged that the notes of the Graham Cotton Mills held by plaintiff should be renewed by the Graham Distilling Company, and plaintiff should loan it an additional $2,000. In a short time thereafter, Parker went to Rockford, called at the Second National Bank, where he met King and Woodruff, and new notes were then made out amounting to something over $6,000, payable to George E. King and George E. Woodruff, signed "Graham Distilling Company, by George E. King, Prest.," and by King and Woodruff indorsed in blank, and delivered to Parker, who thereupon surrendered the notes of the Graham Cotton Mills and delivered "to the Second National Bank of Rockford, to us, (King and Woodruff) as officers," $2,000.

On the trial of the case, the court, over appellant's objections, permitted appellee to introduce parol evidence of an agreement and understanding between King and Woodruff and Parker, that at the time of making and indorsing the notes, King and Woodruff were not to be held liable as indorsers.    It is insisted by appellant that this was erroneous; that evidence of a parol agreement is not competent to alter or vary a written indorsement by the payee of a promissory note.    The rule undoubtedly is that parol evidence is not competent for such purposes.    There are some exceptions to the rule and whatever of seeming conflict there is in the authorities in this state on this question, arises out of cases where the facts show them to come within the exceptions. It is believed that a careful examination of the facts in all the Illinois cases cited by appellee in support of the trial court's ruling admitting the proof offered to contradict or explain the written indorsement, will disclose that they are within the exceptions to the general rule, although some expressions will be found in a few cases which seem to support appellee's position.

In Scammon v. Adams, et al., 11 Ill. 575, cited by appellee, Metzker, the payee of a note for $70, indorsed it in blank to Barker & Best and they indorsed it to their attorney, Scammon, for the purpose of collection, the indorsement being merely in blank.    Scammon brought suit in his own name against the makers of the note.    On the trial, defendants introduced in evidence two receipts from Scammon as attorney for Barker & Best for payments made on the note by defendants, amounting to $42.    They then offered in evidence the receipt of Metzker, the payee in the note, for a payment of $30, made to him to apply on the note, the receipt reciting that it was then in the possession of Barker & Best.    Defendants then introduced a witness who testified he was present at a settlement between Metzker and Barker & Best; that it was agreed between the parties that Metzker owed Barker & Best about $35, and that he indorsed and delivered to them the $70 promissory note sued on and that at the time it was agreed Barker &

Best were to receive from the first proceeds of the note $35 and then the note or the residue of the avails were to go to Metzker. The only errors assigned were the admission of this testimony and the finding of the issues for the defendants. The Supreme Court held no error was committed in admitting the testimony and affirmed the judgment. In this case the evidence clearly shows that Barker & Best received the note for collection under an agreement that they retain $35 which the assignor owed them, and when that was collected, to return the note to Metzker, or, if they collected the whole amount, to return him the excess after taking out what was due them. Through their attorney they had collected all that was due them before suit was brought and Metzker had collected the balance. As to the balance of the note above the amount due Barker & Best they were trustees for Metzker and the authorities all hold that this is one of the exceptions to the general rule. Indeed, in Jones v. Albee, 70 Ill. 34, it was expressly held that this case came within the exceptions to the rule. It was as competent to allow this proof as it would have been to have allowed Barker & Best to explain their indorsement to their attorney, Scammon, if he had sued them as indorsers, and that they could have made this proof is supported by an abundance of authorities.

Kirkham v. Boston, 67 Ill. 599, was a suit in chancery. Nancy E. Kirkham, one of the defendants, sold to Henry Albers certain lands, and to secure the payment of the purchase price took from him three notes secured by mortgage on the land conveyed. She afterwards bought a farm of Boston and gave as payment for it the two Albers notes, first due, and one year's interest on the third note. At the time of this transaction the notes were lost, and this was known to Boston. The mortgage given to secure the three notes was transferred to Boston, and by agreement deposited with Thomas Smith to hold for the benefit of both parties. The day before this mortgage was assigned to Boston, the following agreement was made in writing between the parties: "Nancy E. Kirkham agrees to assign

to Jacob E. Boston two certain notes and mortgages she holds against Henry Albers, and the interest, with the whole mortgage due up to January 21st, 1869, to secure the said Boston the sum of $2,682 she now owes him for the purchase of certain lands in Marion County, Ill."
After this agreement was made, Boston conveyed the land to Mrs. Kirkham, and she moved upon it. Several months afterwards, Boston procured of Albers three notes in lieu of, and to correspond with those lost, and took them to the house of Mrs. Kirkham and asked her to indorse them. This she objected to on the ground that she was not willing to assume the liability of indorser. Boston then told her that Smith, the custodian of the mortgage, had told him to tell her to assign the notes and agreed that if she would do so he would join with her in another proceeding, not necessary here to state, to make the money. Relying on these statements and representations, Mrs. Kirkham indorsed the notes. Afterwards Boston refused to comply with his agreement and foreclosed the mortgage on the Albers land, realizing therefrom $1,400, and then filed a bill against Mrs. Kirkham to subject the land she had purchased of him to the payment of the balance of the purchase price, and also praying that Mrs. Kirkham be held liable as indorser. The Supreme Court held, in substance, that the contract and trade between the parties was consummated some six or eight months before Boston procured the indorsement of the notes; that when the trade was made and completed between the parties, Boston agreed to accept and rely on the notes and mortgage, and that there was no agreement or understanding that Mrs. Kirkham should indorse the notes; that the liabilities and rights of the parties were fixed by the contract and agreement of the parties at the time the conveyance was made. It will be seen the court finds that the indorsement was made long after the sale and conveyance of the land, and that Mrs. Kirkham was induced to indorse the notes by the agreement of Boston to make the money in another proceeding which he failed and refused to keep. Under these circum-

stances, to have held Mrs. Kirkham liable would have been
a palpable fraud on her, and the suit being in equity, the
court held it competent to prove by parol the circumstances
of the indorsement which constituted the fraud, and we
do not think the case is in conflict with the general rule
upon this question in courts of law.

Johnson v. Glover, 121 Ill. 283, cited by appellee, was a
suit against the payee as indorser of a promissory note.
Before the note was due, Johnson, the payee, sold it to
Carton and wrote his name across the back of it twice with
a slight space intervening. Carton sold the note to the
First National Bank of Ottawa and that bank sent it to the
Union National Bank of Chicago for collection. Suit was
brought on the note by Glover who claimed to have pur-
chased it in good faith before maturity. The trial court
admitted evidence that at the time Johnson, appellant, sold
the note to Carton, he agreed to guarantee it and for that
purpose wrote his name across the back of the note twice.
The court held that writing his name twice did not make
him a guarantor; that the law made his liability that of in-
dorser and that the admission of the parol proof was error;
that the law fixed his liability as fully as if the agreement
had been written in words, and that parol evidence was not
competent to contradict or vary it, and cite a number of
Illinois cases. The court then go on to say: "Such evi-
dence is, of course, admissible to establish a trust, to show
the circumstances under which the indorsement is made,
whether in a transaction negotiating the instrument, or
otherwise, or to prove fraud in obtaining the signature," etc.
Citing Jones v. Albee, 70 Ill. 34.

Much reliance is placed on an expression found in the
above quotation and also in some expressions found in Jones
v. Albee, *supra*. The question under discussion when this
language was used, was simply, whether parol evidence was
admissible to show that the payee by writing his name twice
on the back of a note, agreed to assume the liability of a
guarantor as well as an indorser, and we believe the Supreme
Court never intended to be understood by the use of any

part of the language quoted, to broaden the rule as to the admissibility of this class of testimony. Immediately following the language quoted, the opinion goes on to say: "But it is inadmissible to show that the parties intended a different contract than that implied by the law from their acts. (Courtney v. Hogan, and other authorities cited *supra*.) Worden v. Salter, 90 Ill. 160, which asserts a contrary rule, has not been followed in subsequent cases and is now expressly overruled."

In Jones v. Albee, 70 Ill. 34, Cushing gave Albee a promissory note for $2,326.31. Jones signed the following indorsement on the note: "For value received, I hereby guarantee the payment of the within note at maturity." Albee sued Jones on the indorsement. The latter pleaded that this indorsement was procured "through and by means of the fraud, covin and misrepresentation of the plaintiff and others in collusion with him." The court sustained a demurrer to this plea and this ruling is approved by the Supreme Court in the following language: "This plea cannot be sustained by any well settled authority or pleading. If the defendant desired to rely on fraud, the facts constituting the fraud should have been set out in the plea. This we understand to be a well settled rule of pleading." Defendant also pleaded that he bought a manufacturing business and patent right of plaintiff; that he was to pay what they had cost plaintiff; that plaintiff falsely said they cost him $7,326.31 which defendant paid, $5,000 in cash and the balance by indorsing the note sued on; that plaintiff agreed not to hold him on the indorsement for more than the actual cost to plaintiff of the manufacturing business and patent right and averred that their cost was only $3,300. A demurrer was sustained to this plea, also, and the court say: "We are aware of no principle of law upon which this plea can be sustained. The indorsement of this note was a written contract. The pleader sets up a parol contract made at the same time, by which he seeks to change the liability of the indorser, which was absolute. The rule that parol evidence cannot be admitted to contradict or change a written

contract, is based on the soundest principles of public policy and we regard a strict enforcement of this rule to bills of exchange and promissory notes, as very important to the commercial interests of the country." The case of Mason v. Burton, 54 Ill. 354, is then cited and what was said on this subject in that case was approved. The court then further say: "There are only a few classes of cases that form an exception to the rule stated. In a suit by the indorsee against the indorser, it might be shown that the indorsee held as an agent for the indorser and, of course, could take no interest and would have no right to maintain suit. Or it might be shown the note was indorsed for some special purpose, and is holden in trust, as, where a client would indorse to his attorney for collection merely." These form well known and recognized exceptions to the rule. In this case, as shown by the plea above referred to, the facts averred therein and sought to be proven as a defense were of such a character as made it a very proper case to determine what the rule is, and in determining it the court rigidly adhered to the rule announced in Mason v. Burton, *supra*, that the defense could not be made, because parol proof of a verbal agreement, made at the same time as the indorsement, to contradict or alter the written contract, is not admissible. Following the language last quoted, the court further say: "Or it might be shown that a note had been sold on a contract by which reliance was to be placed solely on the responsibility of the maker, and the indorsement was merely to transfer the title under the contract, and that an attempt to hold the indorser was a fraud." This expression is quoted as sustaining appellee's contention that the trial court ruled correctly in admitting the proof offered, and the plea is substantially in this language.

In Courtney et al. v. Hogan, 93 Ill. 101, Hogan, as indorsee, sued Courtney & Co. as indorsers of a promissory note for $2,000, in which they are named as payees. Courtney & Co. pleaded *non assumpsit* and with the plea filed an affidavit that, December 24, 1874, they owed Hogan $2,100 on account, and on that day they had a settlement in which

it was agreed by Hogan that he would accept the note in full satisfaction of all liability of Courtney & Co. on account of said pre-existing indebtedness and as indorsers of said note, except as to $100 balance of the account which was to be, and, the affidavit states, was subsequently paid to Hogan by Courtney & Co., and the receipt for it made an exhibit to the affidavit. The court refused to allow proof of the facts stated in the affidavit and rendered judgment against Courtney & Co. for the amount of the principal and interest due on the note. The Supreme Court affirm the judgment. We quote from the opinion: "It is very clear the defense attempted to be interposed was invalid. In Mason v. Burton, 54 Ill. 349, one of the objections urged against the judgment of the lower court was, that the court refused to allow the appellant to prove a verbal agreement made at the time of the indorsement, to the effect that he should not be responsible as indorser. But it was held the ruling of the lower court was right, and it was said, 'His assignment of the notes meant that in certain contingencies defined by the statute he would pay the notes, and it meant this as fully as if this agreement had been written out in words. This was the legal effect of the assignment and it cannot be impaired by proof of a different parol agreement.' * * * Jones v. Albee, 70 Ill. 34, and Davis v. Brown, 94 U. S., (4 Otto) 423, are cited as holding a different rule. What is decided in Jones v. Albee is not in conflict but in entire consonance with this rule, *although there may be some expressions there that give color to the rule contended for by appellant's counsel.*" This last sentence undoubtedly refers to the paragraph we have last above quoted from Jones v. Albee and which counsel for appellee cite, and were evidently, to some extent at least, guided by in preparing the plea in this case. This expression does not appear to us to be in harmony with the rule laid down in Mason v. Burton which the court approved and followed, and in view of what was said about it in Courtney v. Hogan, *supra,* we are of opinion it is not authority to support appellee's position.

In Worden v. Salter, 90 Ill. 160, Worden wrote his name across the back of the note in which he was payee and delivered it to Salter. Suit was brought by Salter against Worden, and the attorney for plaintiff wrote above Worden's signature, " For value received, I hereby assign the within note to Paul L. Salter and guarantee the payment thereof." Worden denied that he intended to or had agreed to guarantee payment of the note. On the trial there was no objection interposed to parol proof of the agreement of the parties at the time Worden indorsed the note and the court heard the evidence on this question offered by both parties. The competency of this evidence appears not to have been raised in the Supreme Court and that court affirmed the judgment below without any discussion of the admissibility of the testimony. But so fearful were three members of the court that the opinion might be thought to sustain the competency of such testimony, that Mr. Justice Sheldon filed a dissenting opinion which was concurred in by Mr. Chief Justice Craig and Mr. Justice Dickey. In the dissenting opinion Mr. Justice Sheldon said: " The conclusion reached here may, perhaps, be justified on the ground that as parol evidence was entered into without objection, by both sides, to show what was the liability assumed, the question as to the incompetency of such evidence might be considered as having been waived. But I wish to express my dissent from any inference which may be drawn from the opinion, that parol evidence is admissible to show what liability was intended to be assumed by the indorsement in blank of the payee of a promissory note. Whenever the payee of a promissory note indorses it in blank, there is a certain and well known legal import attached thereto—that it is a contract of indorsement, and not one of guaranty or other kind. In such case the liability intended to be assumed appears from the writing itself and cannot be varied by parol, no more than could have been the contract which the law imports had it been written out in words," and among the decisions cited to support this statement of the rule is Jones v. Albee. Sub-

sequently, as we have already seen, the Supreme Court in Johnson v. Glover, *supra*, expressly overruled Worden v. Salter.

In addition to cases before referred to, the following will be found to sustain the position that appellee's testimony was incompetent: Clayes v. White, 65 Ill. 357; Skelton v. Dustin, 92 Ill. 49; Kingsland v. Koeppe, 137 Ill. 344; Hately v. Pike, 162 Ill. 241; Schultz v. Plankinton Bank, 40 Ill. App. 462; Bright v. Kenefick, 94 Ill. App. 462; Martin v. Cole, 104 U. S. 30. It would unnecessarily extend this opinion to attempt a review of all these cases, but to our minds they are conclusive of the question. We will quote only from Martin v. Cole, 104 U. S. 30. In that case Webb made his promissory note payable to Martin who indorsed it to Cole by the following indorsement: "Pay to the order of Luther A. Cole, value received. John H. Martin." Cole sued Martin on the indorsement, and on the trial Martin sought to prove an agreement contemporaneous with his indorsement; that he made the indorsement on the note in blank to enable Cole to collect it in his own name and that Cole agreed then, in consideration of what he had given for the note, that Martin was never to be called upon as indorser or guarantor for its payment in the event Cole failed to collect the note from the maker. The trial court refused to admit the evidence. The Supreme Court held this to be correct, and, after citing and reviewing numerous state decisions holding a contrary rule, hold the doctrine of these cases is untenable and say: " The contract created by the indorsement and delivery of a negotiable note, even *between the immediate parties* to it, is a commercial contract and is not in any proper sense a contract implied by the law, much less an inchoate or imperfect contract. It is an express contract and is in writing, some of the terms of which according to the custom of merchants and for the convenience of commerce, are usually omitted, but not the less on that account perfectly understood."

We hold therefore, that the evidence introduced by appellee to explain the indorsement was incompetent and

should not have been admitted. To our minds the proof did not tend to show that in the transaction King and Woodruff represented and acted as agents of appellant. If it was admitted on the theory that it would show circumstances bringing the case within some of the exceptions to the rule, when heard it utterly failed to do so, and the court should have given the instruction asked by appellant excluding it from consideration by the jury. It could not be competent on the ground of fraud, for no fraud was pleaded. Slack v. McLagan, 15 Ill. 249; Jones v. Albee, *supra*. Neither was it made competent by appellant's filing a replication to and joining issue on appellee's plea, for it was an immaterial issue. 1 Chitty's Pl., 15th ed., 657; Hitchcock v. Haight, 2 Gilman 604; McCully v. Silverburgh, 18 Ill. 306; Hill v. Enders, et al., 19 Ill. 163; Travelers' Preferred Accident Association v. Stone, 50 Ill. App. 222.

The judgment of the court below is reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded.*